# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALFRED SALVITTI, NICO
SALVITTI, and JOHN-DAVID
POTYNSKY,

             Plaintiffs,

    vs.

SCOTT LASCELLES and DANA
DISABATINO,

             Defendants.

Civil Action No. 2:19-cv-00696-ER

**AMENDED COMPLAINT**

JURY TRIAL DEMANDED

## AMENDED COMPLAINT

## NATURE OF THE ACTION

1.    This is an action for patent infringement, company mismanagement, and misappropriation of company resources. Plaintiffs Alfred and Nico Salvitti (collectively, the "Salvittis") bring this action under the patent laws of the United States, 35 U.S.C. § 1, *et seq.*, for past and ongoing, damaging infringement by defendant Scott Lascelles of U.S. Patent Nos. 9,631,892 and D713,923. In addition, the Salvittis and plaintiff John-David Potynsky ("Potynsky") (collectively, "plaintiffs" or the "Majority") bring related claims against defendant Lascelles for breach of contract, breach of fiduciary duties, unjust enrichment, and conversion based on Lascelles' mismanagement and abuse of the parties' company, The Colonel, LLC (the "Company"), a Pennsylvania limited liability company. Plaintiffs also bring claims against Dana DiSabatino, defendant Lascelles' wife, for unjust enrichment, conversion, conspiracy, aiding and abetting, and money had and received. Plaintiffs seek legal and equitable relief, including a preliminary and permanent injunction.

## PARTIES

2.     Alfred Salvitti ("A. Salvitti") is an adult residing in Glen Riddle, Pennsylvania, who holds a one-sixth membership interest in the Company.

3.     Nico Salvitti ("N. Salvitti") is an adult residing in Glen Riddle, Pennsylvania, who holds a one-sixth membership interest in the Company.

4.     John-David Potynsky ("Potynsky") is an adult residing in Pinehurst, North Carolina, who holds a one-third membership interest in the Company.

5.     Scott Lascelles ("Lascelles") is an adult residing in Kennett Square, Pennsylvania, who holds a one-third membership interest in the Company.

6.     Dana DiSabatino ("DiSabatino") is an adult residing in Kennett Square, Pennsylvania, who holds no membership interest in the Company and who is married to defendant Lascelles.

7.     The plaintiffs hold a majority interest in the Company, which maintains its principal place of business in Kennett Square, Pennsylvania.

## JURISDICTION AND VENUE

8.     This action includes claims of patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.     This Court has supplemental jurisdiction over the pendant state law claims that necessarily involve operative facts common to plaintiffs' federal claims such that they form part of the same case or controversy, pursuant to 28 U.S.C. § 1367.

10.     This Court has personal jurisdiction over defendants because they reside in this judicial district.

11.     Venue is also proper under 28 U.S.C. §§ 1400(b) and 1391(b) because defendants reside in this judicial district, defendant Lascelles has committed the infringing acts in this (and other) judicial district(s), and because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

## GENERAL ALLEGATIONS

12.     The Company is a four-member, limited liability company organized under the laws of Pennsylvania with its principal place of business in the Commonwealth. The members of the Company are John-David Potynsky, Alfred Salvitti, Nico Salvitti, and Scott Lascelles (the "Members").

13.     DiSabatino is not a Member of the Company.

14.     Prior to the formal organization of the Company, Potynsky, capitalizing on (i) his extensive military and law enforcement connections and (ii) experience as a former Green Beret, obtained a limited license from the Salvittis to produce and sell knives pursuant to the Salvittis' patented design knife technology under the brand name "Colonel Blades."

15.     Colonel Blades knives were first manufactured in 2013. Potynsky exclusively underwrote the cost of the initial production.

16.     Following the initial manufacturing run of Colonel Blades knives, plaintiffs entered into an agreement with Lascelles to form a company to arrange for the manufacture and sale of the knives, the day-to-day operation of which would be managed by defendant.

17.     On March 28, 2014, as contemplated by all Members, Lascelles formally organized the Company with the Pennsylvania Department of State for the purpose of manufacturing and selling knives made according to the Salvittis' patented knife technology.

18.     The Members have negotiated the terms and conditions of an Operating Agreement for the Company, reflecting their specific agreements, contributions, and rights. That agreement, however, has not been signed.

19.     Nonetheless, relevant here, the Members have agreed, among other things, to share all profits derived from the sale of Colonel Blades knives as follows: 1/3 of all profits would be distributed to Lascelles, 1/3 to Potynsky, and 1/3 to the Salvittis.

20.     The Members further agreed that each Member is entitled to reasonable access to, and to inspect and audit, the Company's books and records, accounting, reporting, and any contracts and/or agreements entered into by the Company.

21.     The Members have not agreed that DiSabatino would be employed by the Company, paid any moneys by the Company, or entitled to any share of the Company's profits.

## THE PATENTS

22.     Colonel Blades knives are manufactured under U.S. Patent Nos. 9,631,892 and D713,923 (the "Patents"), both entitled "Pistol Grip Knife." The Patents are owned exclusively by the Salvittis. Patent No. 9,631,892 was duly and legally issued by the United States Patent and Trademark Office on April 25, 2017, is active, and is attached to this Complaint as Exhibit A. Patent No. D713,923 was duly and legally issued by the United States Patent and Trademark Office on September 23, 2014, is active, and is attached to this Complaint as Exhibit B.

23.     Pursuant to the agreement entered into among the Members, the Salvittis granted the Company a limited license to produce and sell, under the Colonel Blades name, knives that fall within the scope of the Patents.

24.     Pursuant to the agreement entered into among the Members, Potynsky not only paid for the first manufacturing run of the knives, but has also marketed the knives personally and

through his other business to his professional contacts. Potynsky continues to market the knives through his extensive military and law enforcement connections, relationships, and expertise.

25.     Pursuant to the agreement entered into among the Members, Lascelles agreed to be the salesperson for the Company and to handle day-to-day operations include contracting for the manufacture of Colonel Blades knives, receiving inventory, advertising the knives on social media, and fulfilling orders for Colonel Blades knives.

## DEFENDANT'S CONTRACTUAL AND FIDUCIARY VIOLATIONS

26.     The Members agreed to share all profits derived from the sale of Colonel Blades knives, with 1/3 of all profits distributed to Lascelles, 1/3 to Potynsky, and 1/3 to the Salvittis.

27.     The Members further agreed that each Member would have the right to inspect and audit the Company's books and records and to be given an accounting, including access to source documents, of Company income and expenditures upon reasonable request.

28.     Upon information and belief, the Company began realizing profits in 2017 and has continued to realize profits through the present.

29.     Despite the Company's profitability, neither Potynsky nor the Salvittis has ever received a distribution of Company profits.

30.     Neither Potynsky nor the Salvittis has ever received, despite requests, a full and accurate accounting of the Company's performance.

31.     The plaintiffs have, since January 2017, made numerous requests of Lascelles for access to the Company's books and records.

32.     Lascelles has refused and/or failed fully to respond to each of these requests.

33.     Without access to the Company's complete books and records, plaintiffs have no means to evaluate the Company's financial performance or defendant Lascelles' management of the Company and allocation of resources.

34.     As a member of the Company, Lascelles is under statutory and common law duties of good faith, care, and loyalty to the Company and its other members.

35.     Upon information and belief, for some undetermined period before the filing of this complaint, Lascelles has caused the Company to take out loans and has made expenditures using Company funds without authorization of the rest of the Members.

36.     Upon information and belief, Lascelles has used Company funds as his own, and has commingled Company funds with his own personal assets.

37.     Upon information and belief, Lascelles has issued multiple Company checks separately to himself and to DiSabatino for no apparent Company purpose.

38.     Upon information and belief, Lascelles has paid personal (and, it is believed, DiSabatino's personal) federal and state income taxes using Company funds.

39.     Upon information and belief, Lascelles has caused Company funds to be contributed to DiSabatino's personal Individual Retirement Account ("IRA").

40.     Upon information and belief, Lascelles has, through his exclusive control over the books and records and accounts of the Company, caused the Company to violate the profit-sharing agreement entered into among the parties.

41.     Upon information and belief, Lascelles has breached his fiduciary and contractual duties to the Company and to the other Members.

42.     Upon information and belief, DiSabatino has aided and abetted and conspired in furtherance of, and continues to aid and abet and conspire in furtherance of, Lascelles' breaches of his fiduciary and contractual duties to the Company and to the other Members.

43.     Upon information and belief, DiSabatino has profited from, and continues to conspire to profit from, Lascelles' breaches of his fiduciary and contractual duties to the Company and to the other Members.

## INFRINGEMENT OF THE PATENTS

44.     As a result of these acts and omissions by Lascelles, on February 1, 2019, plaintiffs confirmed through counsel, by letter to Lascelles, that the Salvittis had revoked the Company's limited license to make, sell, trade, distribute, import, employ, or profit from the Patents.  A true and correct copy of this letter is attached as Exhibit C.

45.     In this letter, the Salvittis demanded that Lascelles immediately cease manufacturing, importing, using, selling, offering for sale, and/or distributing knives falling within the scope of the Patents.

46.     The Salvittis requested written assurance of Lascelles' compliance with those demands.

47.     On February 4, 2019, Potynsky and the Salvittis received, through counsel, a letter from Lascelles' counsel stating that Lascelles had allegedly partially complied with the Salvittis' demands.

48.     On February 12, 2019, the colonelblades.com website continued to offer knives falling within the scope of the Patents for sale.  A screenshot of the colonelblades.com website's "Shop" page, taken on February 12, 2019, is attached as Exhibit D.

49.     On February 12, 2019, a photograph of a knife falling within the scope of the Patents was posted using the social media platform Instagram by the user "colonel_blades," with the caption, "Full Birds are back in stock!  Visit colonelblades.com to order yours today."  A screenshot of this Instagram post is attached as Exhibit E.

50.     On March 9, 2019, Potynsky and the Salvittis received, through counsel, a letter from Lascelles' counsel stating that Lascelles had allegedly substantially complied with the Salvittis' demands and had stopped selling and offering for sale Colonel Blades brand knives, on condition that plaintiffs agree to meet with a magistrate judge to attempt to resolve this dispute.

51.     Upon information and belief, Lascelles had not complied with the February 1 letter's cease and desist demands until March 9 and continued to sell, and to offer for sale, Colonel Blades brand knives until March 9.

52.     Upon information and belief, Lascelles knows that the knives he continued to offer for sale on the colonelblades.com website and depicted in photographs on Instagram fall within the scope of the Patents.

53.     Furthermore, in their February 1 letter, plaintiffs reiterated their demand that Lascelles immediately provide plaintiffs with access to the Company's books and records and accounts.

54.     On March 8, Lascelles began making a rolling production of documents in response to this request.  This production is still incomplete.

55.     Defendant has breached, and continues to breach, the Members' agreement and his duties of loyalty, care, and good faith and fair dealing by continuing to withhold profits from the other Members and to deny the other Members' reasonable and necessary access to the Company's inventory and books and records.

## CONSPIRACY AND AIDING AND ABETTING

56.     In committing the wrongful acts alleged herein, defendants Lascelles and DiSabatino have pursued a common course of conduct and have acted in concert, and conspired, with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, DiSabatino further aided and abetted and/or assisted Lascelles in breaching his fiduciary and contractual duties.

57.     During all times relevant hereto, defendants Lascelles and DiSabatino, together and individually, initiated a course of conduct that was designed to and did facilitate: (1) Lascelles' infringement of the Salvittis' patents; (2) Lascelles' breaches of his fiduciary and contractual duties to the Company and to the other Members; (3) Lascelles' and DiSabatino's conversion of Company funds; and (4) Lascelles' and DiSabatino's unjust enrichment at the expense of the Company and plaintiffs.  In furtherance of these ends, defendants together and individually took the actions set forth herein.

58.     The purpose and effect of defendants' conspiracy was, among other things, to facilitate Lascelles' infringement of the Salvittis' patents, defendants' conversion of Company funds, and defendants' unjust enrichment at the expense of the Company and plaintiffs.

59.     Defendants accomplished their conspiracy by taking the actions complained of herein.

60.     DiSabatino aided and abetted and rendered substantial assistance in Lascelles' commission of the wrongs complained of herein.

## COUNT I:  INFRINGEMENT OF U.S. PATENT NOS. 9,631,892 AND D713,923

### (Salvittis v. Lascelles)

9

61. Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

62. Defendant Lascelles directly infringed the Patents by, without authority from the Salvittis, making, selling, trading, distributing, importing, using, offering for sale, and/or distributing knives falling within the scope of the Patents, in violation of 35 U.S.C. § 271(a), until conditionally ceasing such infringing activity on March 9.

63. Lascelles continues to infringe the Patents by importing knives falling within the scope of the patents, in violation of 35 U.S.C. § 271(a).

64. Lascelles' acts of infringement of the Patents were, and continue to be, undertaken without permission or license from the Salvittis.

65. Upon information and belief, Lascelles possessed specific intent to directly infringe the Patents by disregarding the patent holder's requests contained in the February 1 letter.

66. The Salvittis have suffered monetary damages and other injuries as a result of Lascelles' past and continuing infringement of the Patents. The Salvittis are entitled to recover damages in an amount to be determined at trial, but in any event no less than a reasonable royalty.

67. Additionally, the Salvittis have been irreparably harmed by Lascelles' past and continuing infringement of the Patents, and unless they are immediately and permanently enjoined by this Court, Lascelles' acts of infringement will continue to damage the Salvittis irreparably.

68. The Salvittis have no adequate remedy at law for the harm caused by Lascelles' past and continuing infringement of the patents as an award of monetary damages would not provide an adequate remedy for the lost business opportunities, brand dilution, brand destruction, loss of goodwill, and irrevocable interference with manufacturer and customer relationships caused by Lascelles' infringing activities.

## COUNT II:  BREACH OF CONTRACT

### (Plaintiffs v. Lascelles)

69.     Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

70.     Defendant Lascelles has breached, and remains in breach of, the Members' agreements by previously withholding and by continuing to withhold distributions of Company profits to plaintiffs.

71.     Defendant Lascelles has breached, and remains in breach of, the Members' agreements by previously denying, and continuing to deny, and/or failing to fully and timely respond to, plaintiffs' requests for access to the Company's books and records and accounts.

72.     Defendant Lascelles has breached, and remains in breach of, the Members' agreements by causing the Company to take out loans for defendant's exclusive benefit and by making personal and purportedly Company-related expenditures using Company funds without plaintiffs' authorization.

73.     Defendant Lascelles has breached, and remains in breach of, the Members' agreement by using Company funds as his own and commingling Company funds with his own personal assets.

74.     Defendant Lascelles has breached, and remains in breach of, the Members' agreement by having issued multiple Company checks to himself and to DiSabatino for no apparent Company purpose.

75.     Defendant Lascelles has breached, and remains in breach of, the Members' agreement by having paid personal (and, it is believed, DiSabatino's personal) federal and state income taxes using Company funds.

76. Defendant Lascelles has breached, and remains in breach of, the Members' agreement by having caused Company funds to be contributed to DiSabatino's personal IRA.

77. Defendant Lascelles has breached the Members' agreement by carrying on, until March 9, the business of selling Colonel Blades knives against the requests of plaintiffs embodied in the February 1 letter.

78. Defendant Lascelles has breached, and remains in breach of, the Members' agreement by continuing to import Colonel Blades knives against the requests of plaintiffs embodied in the February 1 letter, and by denying plaintiffs' access to Company inventory.

79. Plaintiffs have suffered injuries and damages that were caused by defendant Lascelles' breaches of the Members' agreement.

80. Plaintiffs bring these claims against defendant Lascelles in their individual capacities, under 15 Pa. C.S.A. § 8881, and in a derivative capacity on behalf of the Company, under 15 Pa. C.S.A. § 8882, for the harm to the Company.

## COUNT III: BREACH OF FIDUCIARY DUTIES

### (Plaintiffs v. Lascelles)

81. Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

82. Defendant Lascelles owes fiduciary duties of good faith, loyalty and care to the Company and to the other Members of the Company, pursuant to 15 Pa. C.S.A. § 8849.1(a) and the common law.

83. Defendant Lascelles has breached, and remains in breach of his duties of loyalty, care, and good faith and fair dealing by previously withholding and by, among other things, continuing to withhold distributions of Company profits to plaintiffs.

84. Defendant Lascelles has breached, and remains in breach of, his duties of loyalty, care, and good faith and fair dealing to the other Members of the Company by previously denying, and continuing to deny, and/or failing to fully and timely respond to, plaintiffs' requests for access to the company's books and records and accounts.

85. Defendant Lascelles has breached, and remains in breach of, his duties of loyalty, care, and good faith and fair dealing by previously causing the Company to take out loans for defendant's personal benefit and by making expenditures for defendant's personal benefit using Company funds without authorization of the rest of the Members.

86. Defendant Lascelles has breached, and remains in breach of, his duties of loyalty, care, and good faith and fair dealing by using Company funds as his own and commingling Company funds with his own personal assets.

87. Defendant Lascelles has breached, and remains in breach of, his duties of loyalty, care, and good faith and fair dealing by issuing multiple Company checks to himself and to DiSabatino for no apparent Company purpose.

88. Defendant Lascelles has breached, and remains in breach of, his duties of loyalty, care, and good faith and fair dealing by paying personal (and, it is believed, DiSabatino's personal) federal and state income taxes using Company funds.

89. Defendant Lascelles has breached, and remains in breach of, his duties of loyalty, care, and good faith and fair dealing by having caused Company funds to be contributed to DiSabatino's personal IRA.

90. Defendant Lascelles has breached his duties of loyalty, care, and good faith and fair dealing by carrying on until March 9 the business of selling Colonel Blades knives against the requests of plaintiffs embodied in the February 1 letter.

91.     Defendant Lascelles has breached, and remains in breach of, the Members' agreement by continuing to import Colonel Blades knives against the requests of plaintiffs embodied in the February 1 letter, and by denying plaintiffs' access to Company inventory.

92.     Plaintiffs have suffered injuries and damages that were caused by defendant Lascelles' breaches of fiduciary duties.

93.     Plaintiffs bring these claims against defendant Lascelles in their individual capacities, under 15 Pa. C.S.A. § 8881, and in a derivative capacity on behalf of the Company, under 15 Pa. C.S.A. § 8882 for damage thereto.

## COUNT IV:  UNJUST ENRICHMENT

### (Plaintiffs v. Lascelles and DiSabatino)

94.     Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

95.     At all times relevant to this litigation, Lascelles owed a legal duty to plaintiffs not to enrich himself unjustly at plaintiffs' expense.

96.     By defendant Lascelles' wrongful acts and omissions, set forth above, Lascelles was unjustly enriched at the expense, and to the detriment, of plaintiffs and the Company.

97.     Defendant Lascelles has been unjustly enriched by previously wrongfully withholding and by continuing to withhold distributions of Company profits to plaintiffs.

98.     Defendant Lascelles has been unjustly enriched by using Company funds as his own and commingling Company funds with his own personal assets.

99.     Defendant Lascelles has been unjustly enriched by issuing multiple Company checks to himself for no apparent Company purpose.

100.    Defendant DiSabatino has been unjustly enriched by Lascelles' having issued multiple Company checks to her for no apparent Company purpose.

101.    Defendant Lascelles has been unjustly enriched by paying personal (and, it is believed, DiSabatino's personal) federal and state income taxes using Company funds.

102.    Defendant DiSabatino has been unjustly enriched by Lascelles' having caused Company funds to be contributed to her personal IRA.

103.    Plaintiffs have suffered injuries and damages which were caused by Lascelles' and DiSabatino's unjust enrichment.

## COUNT V:  CONVERSION

### (Plaintiffs v. Lascelles and DiSabatino)

104.    Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

105.    At all times relevant to this litigation, defendant Lascelles owed plaintiffs and the Company a duty not to convert plaintiffs' property to Lascelles' own use and benefit.

106.    Defendant Lascelles has converted plaintiffs' property to his own use and benefit by previously withholding and by continuing to withhold distributions of Company profits to plaintiffs.

107.    Defendant Lascelles has converted plaintiffs' property to his own use and benefit by issuing multiple Company checks to himself for no apparent Company purpose.

108.    Defendant DiSabatino has converted plaintiffs' property to her own use and benefit by Lascelles' having issued multiple Company checks to her for no apparent Company purpose.

109. Defendant Lascelles has converted plaintiffs' property to his own use and benefit by paying personal (and, it is believed, DiSabatino's personal) federal and state income taxes using Company funds.

110. Defendant DiSabatino has converted plaintiffs' property to her own use and benefit by Lascelles' having caused Company funds to be contributed to her personal IRA.

111. Plaintiffs have suffered injuries and damages that were caused by Lascelles' and DiSabatino's conversion of their property to their own use and benefit.

## COUNT VI: CONSPIRACY

### (Plaintiffs v. Lascelles and DiSabatino)

112. Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

113. Lascelles has breached his fiduciary and contractual duties to the Company and to plaintiffs.

114. Lascelles and DiSabatino have been unjustly enriched at the expense of the Company and plaintiffs.

115. Lascelles and DiSabatino have converted plaintiffs' property to their own use and benefit.

116. Lascelles and DiSabatino have engaged in a conspiracy to commit the offenses described herein.

117. As a direct and proximate result of Lascelles' and DiSabatino's engaging in a conspiracy to commit the offenses described herein, plaintiffs have sustained and continue to sustain monetary damages and irreparable harm for which there is no adequate remedy at law.

## COUNT VII: AIDING AND ABETTING

### (Plaintiffs v. DiSabatino)

118.    Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

119.    Lascelles has breached his fiduciary and contractual duties to the Company and to plaintiffs.

120.    DiSabatino has knowingly assisted Lascelles in his breaches of fiduciary and contractual duties, in his unjust enrichment at the expense of plaintiffs and the Company, and in his conversion of plaintiffs' property.

121.    As a direct and proximate result of DiSabatino's aiding and abetting Lascelles' commission of the offenses described herein, plaintiffs have sustained and continue to sustain monetary damages and irreparable harm for which there is no adequate remedy at law.

### COUNT VIII: MONEY HAD AND RECEIVED

### (Plaintiffs v. DiSabatino)

122.    Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

123.    DiSabatino has received money through Lascelles' issuance to her of multiple Company checks for no apparent Company purpose.

124.    DiSabatino has received property through Lascelles' causing Company funds to be contributed to her personal IRA.

125.    DiSabatino is not entitled to keep this money and property.

126.    Equity and good conscience dictate that this money and property should be paid and given to plaintiffs.

127.    As a direct and proximate result of DiSabatino's receipt of this money and property which she is not entitled to keep, plaintiffs have sustained monetary damages.

## COUNT IX:  CLAIM FOR INJUNCTIVE RELIEF (PATENT INFRINGEMENT)

### (Salvittis v. Lascelles)

128.    Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

129.    The Salvittis have been irreparably harmed by defendant Lascelles' acts and omissions as set forth above and, unless they are enjoined by this Court, defendant Lascelles' acts and omissions will continue to damage the Salvittis irreparably.

130.    Defendant Lascelles should immediately and permanently be enjoined from the acts and omissions set forth above.

## COUNT X:  PRELIMINARY INJUNCTION (PATENT INFRINGEMENT)

### (Salvittis v. Lascelles)

131.    Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

132.    The Salvittis seek a preliminary injunction against defendant Lascelles, which is necessary to prevent immediate and irreparable harm to the Salvittis.

133.    Defendant Lascelles' acts and omissions establish that unless this Court issues a preliminary injunction and if the parties do not resolve this dispute imminently with the assistance of a magistrate judge, he will continue his infringing activities, including selling and offering the knives for sale.  These acts of infringement will continue to damage the Salvittis irreparably, as the Salvittis have no adequate remedy at law.  An award of monetary damages would not provide an adequate remedy for the lost business opportunities, brand dilution, brand destruction, loss of

goodwill, and interference with manufacturer and customer relationships that have resulted and will continue to result from defendant Lascelles' infringing activities.

134. Defendant Lascelles will not be harmed if he is enjoined from continuing the infringing activities.

135. Greater injury will follow from denial of a preliminary injunction than from its issuance.

136. The Salvittis are likely to succeed on the merits of this Complaint, as defendant Lascelles' acts constitute direct infringement of the Patents.

137. The Salvittis have also suffered monetary damages and other injuries as a result of defendant Lascelles' past and continuing infringement of the Patents, as set forth above.

138. Defendant Lascelles should immediately be enjoined from the infringing activities set forth above.

## COUNT XI:  CLAIM FOR INJUNCTIVE RELIEF
## (BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTIES)

### (Plaintiffs v. Lascelles)

139. Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

140. Plaintiffs have been irreparably harmed by defendant Lascelles' breaches of the Members' agreements and of his duties of loyalty, care, and good faith and fair dealing, as set forth above and, unless they are enjoined by this Court, defendant Lascelles' acts and omissions will continue to damage plaintiffs irreparably.

141. Defendant Lascelles should immediately and permanently be enjoined from the acts and omissions set forth above

## COUNT XII:  PRELIMINARY INJUNCTION

## (BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTIES)

### (Plaintiffs v. Lascelles)

142.   Plaintiffs reallege and incorporate herein by reference the allegations set forth above.

143.   Plaintiffs seek a preliminary injunction against defendant Lascelles, which is necessary to prevent immediate and irreparable harm.

144.   Defendant Lascelles' acts and omissions establish that unless this Court issues a preliminary injunction, he will continue carrying on the business of selling Colonel Blades knives against plaintiffs' demands and in breach of the Members' agreement and of Lascelles' duties of loyalty, care, and good faith and fair dealing.   Defendant Lascelles' acts and omissions will continue to damage plaintiffs irreparably, as plaintiffs have no adequate remedy at law.   An award of monetary damages would not provide an adequate remedy for the lost business opportunities, brand dilution, brand destruction, loss of goodwill, and interference with manufacturer and customer relationships that have resulted and will continue to result from defendant Lascelles' continuing to carry on the business of selling Colonel Blades knives.

145.   Defendant Lascelles will not be unduly harmed if he is enjoined from continuing the unauthorized activities.

146.   Greater injury will follow from denial of a preliminary injunction than from its issuance.

147.   Plaintiffs are likely to succeed on the merits of this Complaint, as defendant Lascelles' acts are in direct violation of the Members' agreements, and in direct breach of his duties of loyalty, care, and good faith and fair dealing.

148.    Plaintiffs have also suffered monetary damages and other injuries as a result of defendant Lascelles' past and continuing breaches of the Members' agreements and his duties of loyalty, care, and good faith and fair dealing, as set forth above.

149.    Defendant Lascelles should immediately be enjoined from carrying on the business of selling Colonel Blades knives.

### PRAYER FOR RELIEF

**WHEREFORE**, the Salvittis respectfully request that this Court:

a.      Enter a judgment that defendant Lascelles has infringed the Patents;

b.      Grant an immediate, preliminary injunction restraining and enjoining defendant Lascelles and his agents, servants, employees, successors, assigns, and affiliated or related companies from infringing the Patents;

c.      Grant a permanent injunction restraining and enjoining defendant Lascelles and his agents, servants, employees, successors, assigns, and affiliated or related companies from infringing the Patents;

d.      Award the Salvittis damages in an amount sufficient to compensate them for Lascelles' infringement of the Patents, but not less than a reasonable royalty, together with interests and costs;

e.      Award prejudgment interest to the Salvittis under 35 U.S.C. § 284;

f.      Find that Lascelles' infringement has been willful, and treble the damages awarded to the Salvittis under 35 U.S.C. § 284;

g.      Declare this case exceptional under 35 U.S.C. § 285 and award the Savittis their expenses of litigation, including reasonable attorneys' fees;

h.      Perform an accounting of Lascelles' infringing activities through trial and judgment;

**WHEREFORE**, all plaintiffs respectfully request that this Court:

i.      Direct defendant Lascelles to perform an accounting of the Company's income and expenses for the years 2015 through the present;

j.      Direct defendant Lascelles immediately to provide full and complete access to the books and records and accounts of the Company;

k.      Grant a permanent injunction restraining and enjoining defendant Lascelles and his agents, servants, employees, successors, assigns, and affiliated or related companies from selling Colonel Blades knives;

l.      Grant a permanent injunction restraining and enjoining defendant Lascelles and his agents, servants, employees, successors, assigns, and affiliated or related companies from competing with the Company's business of selling Colonel Blades knives;

m.      Grant a permanent injunction restraining and enjoining defendant Lascelles and his agents, servants, employees, successors, assigns, and affiliated or related companies from interfering with the Company's business of selling Colonel Blades knives;

n.      Award plaintiffs damages in an amount sufficient to compensate them for defendant Lascelles' breach of contract and breach of fiduciary duties;

o.      Award plaintiffs damages in an amount sufficient to compensate them for defendant Lascelles' and DiSabatino's conversion and unjust enrichment;

p.      Award plaintiffs damages in an amount sufficient to compensate them for DiSabatino's receipt of money and property she is not entitled to keep; and

q.      Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: April 8, 2019

Joel Max Eads /s/

Joel Max Eads, Esquire
Jonathan Wise, Esquire
Kathleen M. Kline, Esquire
GREENBERG TRAURIG, LLP
1717 Arch Street, Suite 400
Philadelphia, PA 19103
(215) 988.7800
eadsj@gtlaw.com
wisej@gtlaw.com
klineka@gtlaw.com

*Attorneys for Plaintiffs Alfred Salvitti, Nico Salvitti, and John-David Potynsky*

## CERTIFICATE OF SERVICE

I, Joel Max Eads, Esq., do hereby certify that on this 8th day of April, 2019, a true and

correct copy of the foregoing Amended Civil Complaint was filed with the Court and served on

the following:

Mr. Scott Lascelles
The Colonel, LLC
415 Red Clay Drive
Kennett Square, PA 19348

Ms. Dana DiSabatino
415 Red Clay Drive
Kennett Square, PA 19348

Joel Max Eads /s/

Joel Max Eads, Esq.

*Attorney for Plaintiffs*