## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
:
ALFRED SALVITTI, NICO SALVITTI,            :          CIVIL ACTION
and JOHN-DAVID POTYNSKY,                    :
:          NO. 19-696
Plaintiffs,                 :
:          **JURY TRIAL DEMANDED**
v.                       :
:
SCOTT LASCELLES and DANA             :
DISABATINO,                                          :
:
Defendants.               :
_____

## DEFENDANTS SCOTT LASCELLES AND DANA DISABATINO'S
## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
## TO PLAINTIFFS' AMENDED COMPLAINT

Defendants Scott Lascelles ("Mr. Lascelles") and Dana DiSabatino ("Ms. DiSabatino") (together, "Defendants"), by and through their counsel Conrad O'Brien PC, file this Answer, Affirmative Defenses, and Counterclaims to the Amended Complaint filed by Plaintiffs Alfred Salvitti ("A. Salvitti"), Nico Salvitti ("N. Salvitti"), and John-David Potynsky ("Potynsky") (collectively "Plaintiffs"). Pursuant to Federal Rule of Civil Procedure 8(b)(3), Defendants deny the allegations and characterizations in Plaintiffs' Amended Complaint unless expressly admitted in the following paragraphs, and state as follows:

### NATURE OF THE ACTION

1.      Denies the allegations of Paragraph 1, except admits that Plaintiffs purport to bring this action as described.

### PARTIES

2.      Denies the allegations of Paragraph 2, except admits that upon information and belief A. Salvitti resides in Glen Riddle, Pennsylvania.

3.    Denies the allegations of Paragraph 3, except admits that upon information and belief N. Salvitti resides in Glen Riddle, Pennsylvania.

4.    Denies the allegations of Paragraph 4, except admits that upon information and belief Potynsky resides in Pinehurst, North Carolina.

5.    Denies the allegations of Paragraph 5, except admits that Mr. Lascelles resides in Kennett Square, Pennsylvania.

6.    Admits the allegations of Paragraph 6.

7.    Denies the allegations of Paragraph 7, except admits that The Colonel LLC maintains its principal place of business in Kennett Square, Pennsylvania.

## JURISDICTION AND VENUE

8.    Denies the allegations of Paragraph 8, except admits that Plaintiffs purport to bring this action as described.

9.    Denies the allegations of Paragraph 9, except admits that Plaintiffs purport to bring this action as described.

10.    Admits the allegations of Paragraph 10.

11.    Denies the allegations of Paragraph 11.

## GENERAL ALLEGATIONS

12.    Denies the allegations of Paragraph 12.

13.    Admits the allegations of Paragraph 13.

14.    Denies the allegations of Paragraph 14.

15.    Denies the allegations of Paragraph 15.

16.    Denies the allegations of Paragraph 16.

17.    Denies the allegations of Paragraph 17.

18.     Denies the allegations of Paragraph 18.

19.     Denies the allegations of Paragraph 19.

20.     Denies the allegations of Paragraph 20.

21.     Denies the allegations of Paragraph 21.

**THE PATENTS**

22.     Denies the allegations of Paragraph 22.

23.     Denies the allegations of Paragraph 23.

24.     Denies the allegations of Paragraph 24.

25.     Denies the allegations of Paragraph 25.

**DEFENDANT'S CONTRACTUAL AND FIDUCIARY VIOLATIONS**

26.     Denies the allegations of Paragraph 26.

27.     Denies the allegations of Paragraph 27.

28.     Denies the allegations of Paragraph 28.

29.     Denies the allegations of Paragraph 29.

30.     Denies the allegations of Paragraph 30.

31.     Denies the allegations of Paragraph 31.

32.     Denies the allegations of Paragraph 32.

33.     Denies the allegations of Paragraph 33.

34.     Denies the allegations of Paragraph 34.

35.     Denies the allegations of Paragraph 35.

36.     Denies the allegations of Paragraph 36.

37.     Denies the allegations of Paragraph 37.

38.     Denies the allegations of Paragraph 38.

39.    Denies the allegations of Paragraph 39.

40.    Denies the allegations of Paragraph 40.

41.    Denies the allegations of Paragraph 41.

42.    Denies the allegations of Paragraph 42.

43.    Denies the allegations of Paragraph 43.

## INFRINGEMENT OF THE PATENTS

44.    Denies the allegations of Paragraph 44, except admits that Plaintiffs' counsel sent Mr. Lascelles a letter dated February 1, 2019, and refers to the letter for a true and complete depiction of its contents.

45.    Denies the allegations of Paragraph 45, except admits that Plaintiffs' counsel sent Mr. Lascelles a letter dated February 1, 2019, and refers to the letter for a true and complete depiction of its contents.

46.    Denies the allegations of Paragraph 46, except admits that Plaintiffs' counsel sent Mr. Lascelles a letter dated February 1, 2019, and refers to the letter for a true and complete depiction of its contents.

47.    Denies the allegations of Paragraph 47, except admits that Mr. Lascelles, through prior counsel, sent Plaintiffs' counsel a letter dated February 4, 2019, and refers to the letter for a true and complete depiction of its contents.

48.    Denies the allegations of Paragraph 48.

49.    Denies the allegations of Paragraph 49.

50.    Denies the allegations of Paragraph 50, except admits that Mr. Lascelles, through counsel, sent Plaintiffs' counsel a letter dated March 9, 2019, and refers to the letter for a true and complete depiction of its contents.

51.     Denies the allegations of Paragraph 51.

52.     Denies the allegations of Paragraph 52.

53.     Denies the allegations of Paragraph 53, except admits that Plaintiffs' counsel sent Mr. Lascelles a letter dated February 1, 2019, and refers to the letter for a true and complete depiction of its contents.

54.     Denies the allegations of Paragraph 54, except admit that Mr. Lascelles has produced many documents in response to Plaintiffs' document requests.

55.     Denies the allegations of Paragraph 55.

## CONSPIRACY AND AIDING AND ABETTING

56.     Denies the allegations of Paragraph 56.

57.     Denies the allegations of Paragraph 57.

58.     Denies the allegations of Paragraph 58.

59.     Denies the allegations of Paragraph 59.

60.     Denies the allegations of Paragraph 60.

## COUNT I: INFRINGEMENT OF U.S. PATENT NOS. 9,631,892 AND D713,923
### (Salvittis v. Lascelles)

61.     Mr. Lascelles incorporates all of the above responses to the allegations contained in each of the numbered paragraphs from 1-60 as if they were fully stated here.

62.     Denies the allegations of Paragraph 62.

63.     Denies the allegations of Paragraph 63.

64.     Denies the allegations of Paragraph 64.

65.     Denies the allegations of Paragraph 65.

66.     Denies the allegations of Paragraph 66.

67.     Denies the allegations of Paragraph 67.

68.    Denies the allegations of Paragraph 68.

## COUNT II: BREACH OF CONTRACT
### (Plaintiffs v. Lascelles)

69.    Mr. Lascelles incorporates all of the above responses to the allegations contained

in each of the numbered paragraphs from 1-68 as if they were fully stated here.

70.    Denies the allegations of Paragraph 70.

71.    Denies the allegations of Paragraph 71.

72.    Denies the allegations of Paragraph 72.

73.    Denies the allegations of Paragraph 73.

74.    Denies the allegations of Paragraph 74.

75.    Denies the allegations of Paragraph 75.

76.    Denies the allegations of Paragraph 76.

77.    Denies the allegations of Paragraph 77.

78.    Denies the allegations of Paragraph 78.

79.    Denies the allegations of Paragraph 79.

80.    Denies the allegations of Paragraph 80.

## COUNT III: BREACH OF FIDUCIARY DUTIES
### (Plaintiffs v. Lascelles)

81.    Mr. Lascelles incorporates all of the above responses to the allegations contained

in each of the numbered paragraphs from 1-80 as if they were fully stated here.

82.    Denies the allegations of Paragraph 82.

83.    Denies the allegations of Paragraph 83.

84.    Denies the allegations of Paragraph 84.

85.    Denies the allegations of Paragraph 85.

86.     Denies the allegations of Paragraph 86.

87.     Denies the allegations of Paragraph 87.

88.     Denies the allegations of Paragraph 88.

89.     Denies the allegations of Paragraph 89.

90.     Denies the allegations of Paragraph 90.

91.     Denies the allegations of Paragraph 91.

92.     Denies the allegations of Paragraph 92.

93.     Denies the allegations of Paragraph 93.

## COUNT IV: UNJUST ENRICHMENT
### (Plaintiffs v. Lascelles and DiSabatino)

94.     Defendants incorporate all of the above responses to the allegations contained in each of the numbered paragraphs from 1-93 as if they were fully stated here.

95.     Denies the allegations of Paragraph 95.

96.     Denies the allegations of Paragraph 96.

97.     Denies the allegations of Paragraph 97.

98.     Denies the allegations of Paragraph 98.

99.     Denies the allegations of Paragraph 99.

100.    Denies the allegations of Paragraph 100.

101.    Denies the allegations of Paragraph 101.

102.    Denies the allegations of Paragraph 102.

103.    Denies the allegations of Paragraph 103.

## COUNT V: CONVERSION
### (Plaintiffs v. Lascelles and DiSabatino)

104.    Defendants incorporate all of the above responses to the allegations contained in

each of the numbered paragraphs from 1-103 as if they were fully stated here.

105.    Denies the allegations of Paragraph 105.

106.    Denies the allegations of Paragraph 106.

107.    Denies the allegations of Paragraph 107.

108.    Denies the allegations of Paragraph 108.

109.    Denies the allegations of Paragraph 109.

110.    Denies the allegations of Paragraph 110.

111.    Denies the allegations of Paragraph 111.

## COUNT VI: CONSPIRACY
### (Plaintiffs v. Lascelles and DiSabatino)

112.    Defendants incorporate all of the above responses to the allegations contained in

each of the numbered paragraphs from 1-111 as if they were fully stated here.

113.    Denies the allegations of Paragraph 113.

114.    Denies the allegations of Paragraph 114.

115.    Denies the allegations of Paragraph 115.

116.    Denies the allegations of Paragraph 116.

117.    Denies the allegations of Paragraph 117.

## COUNT VII: AIDING AND ABETTING
### (Plaintiffs v. DiSabatino)

118.    Ms. DiSabatino incorporates all of the above responses to the allegations contained

in each of the numbered paragraphs from 1-117 as if they were fully stated here.

119.    Denies the allegations of Paragraph 119.

120.    Denies the allegations of Paragraph 120.

121.    Denies the allegations of Paragraph 121.

## COUNT VIII: MONEY HAD AND RECEIVED
### (Plaintiffs v. DiSabatino)

122.    Ms. DiSabatino incorporates all of the above responses to the allegations contained

in each of the numbered paragraphs from 1-121 as if they were fully stated here.

123.    Denies the allegations of Paragraph 123.

124.    Denies the allegations of Paragraph 124.

125.    Denies the allegations of Paragraph 125.

126.    Denies the allegations of Paragraph 126.

127.    Denies the allegations of Paragraph 127.

## COUNT IX: CLAIM FOR INJUNCTIVE RELIEF (PATENT INFRINGEMENT)
### (Salvittis v. Lascelles)

128.    Mr. Lascelles incorporates all of the above responses to the allegations contained

in each of the numbered paragraphs from 1-127 as if they were fully stated here.

129.    Denies the allegations of Paragraph 129.

130.    Denies the allegations of Paragraph 130.

## COUNT X: PRELIMINARY INJUNCTION (PATENT INFRINGEMENT)
### (Salvittis v. Lascelles)

131.    Mr. Lascelles incorporates all of the above responses to the allegations contained

in each of the numbered paragraphs from 1-130 as if they were fully stated here.

132.    Denies the allegations of Paragraph 132.

133.    Denies the allegations of Paragraph 133.

134.    Denies the allegations of Paragraph 134.

135.    Denies the allegations of Paragraph 135.

136.    Denies the allegations of Paragraph 136.

137.    Denies the allegations of Paragraph 137.

138.    Denies the allegations of Paragraph 138.

## COUNT XI: CLAIM FOR INJUNCTIVE RELIEF
## (BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTIES)
## (Plaintiffs v. Lascelles)

139.    Mr. Lascelles incorporates all of the above responses to the allegations contained

in each of the numbered paragraphs from 1-138 as if they were fully stated here.

140.    Denies the allegations of Paragraph 140.

141.    Denies the allegations of Paragraph 141.

## COUNT XII: PRELIMINARY INJUNCTION
## (BREACH OF CONTRACT AND BREACH OF FIDUCIARY DUTIES)
## (Plaintiffs v. Lascelles)

142.    Mr. Lascelles incorporates all of the above responses to the allegations contained

in each of the numbered paragraphs from 1-141 as if they were fully stated here.

143.    Denies the allegations of Paragraph 143.

144.    Denies the allegations of Paragraph 144.

145.    Denies the allegations of Paragraph 145.

146.    Denies the allegations of Paragraph 146.

147.    Denies the allegations of Paragraph 147.

148.    Denies the allegations of Paragraph 148.

149.    Denies the allegations of Paragraph 149.

## PRAYER FOR RELIEF

Denies that Plaintiffs are entitled to the relief requested in the "WHEREFORE" clauses

and their subparts (a-q) following Paragraph 149.

## AFFIRMATIVE DEFENSES

Defendants' Affirmative Defenses are listed below. Defendants reserve the right to amend

their answer to add additional Affirmative Defenses consistent with the facts discovered in this case.

## FIRST AFFIRMATIVE DEFENSE

Mr. Lascelles has not infringed and does not infringe, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of Patents 9,631,892 and D713,923 (collectively, the "patents-in-suit").

## SECOND AFFIRMATIVE DEFENSE

Each asserted claim of the patents-in-suit is invalid for failure to comply with one or more of the requirements of the United States Code, Title 35, including without limitation, 35 U.S.C. §§ 101, 102, 103, and 112, and the rules, regulations, and laws pertaining thereto.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' attempted enforcement of the patents-in-suit against Mr. Lascelles is barred by the doctrine of inequitable conduct.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by 35 U.S.C. §§ 286 and/or 287.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' attempted enforcement of the patents-in-suit against Mr. Lascelles is barred by one or more of the equitable doctrines of laches, estoppel, acquiescence, waiver, and unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by reason of patent misuse.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the products sold by Mr. Lascelles and/or The Colonel LLC are not covered by the patents-in-suit.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Mr. Lascelles had and/or has an express and/or implicit license to use the patents-in-suit.

## TENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs were not members and/or owners of The Colonel LLC.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Defendants did not breach any contractual or fiduciary duty or obligation owed to Plaintiffs.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, for failure to mitigate damages.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs, and not Defendants, are the cause of their own damages (if any).

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of unjust enrichment.

## FIFTEENTH AFFIRMATIVE DEFENSE

Plaintiffs lack standing to bring a claim in a derivative capacity under 15 Pa. C.S.A § 8882

because they are not members or managers of The Colonel LLC.

## SIXTEENTH AFFIRMATIVE DEFENSE

Defendants reserve the right to assert additional affirmative defenses as he discovers the grounds for them through discovery or other investigation.

## COUNTERCLAIMS

For his counterclaims against Plaintiffs Alfred Salvitti ("A. Salvitti"), Nico Salvitti ("N. Salvitti"), and John-David Potynsky ("Potynsky") (collectively "Counter Defendants" or "Plaintiffs"), Scott Lascelles ("Counter Claimant" or "Mr. Lascelles") alleges as follows:

## PARTIES

1.    Mr. Lascelles is an individual residing in Kennett Square, Pennsylvania.

2.    Mr. Lascelles is the sole owner and member of The Colonel LLC.

3.    The Colonel LLC is a Pennsylvania limited liability company that has its principal place of business in Kennett Square, Pennsylvania.

4.    Upon information and belief based solely on Paragraph 2 of Plaintiffs' Amended Complaint, A. Salvitti is an individual residing in Glen Riddle, Pennsylvania.

5.    Upon information and belief based solely on Paragraph 3 of Plaintiffs' Amended Complaint, N. Salvitti is an individual residing in Glen Riddle, Pennsylvania.

6.    Upon information and belief based solely on Paragraph 4 of Plaintiffs' Amended Complaint, Potynsky is an individual residing in Pinehurst, North Carolina.

## JURISDICTION

7.    The Court has jurisdiction over these counterclaims because they arise out of the same transaction or occurrence that is the subject matter of Plaintiffs' Amended Complaint.

## GENERAL ALLEGATIONS

8.     In early 2013, Plaintiffs attempted to manufacture and sell a specialized weaponry blade. Plaintiffs had no success in this endeavor for a variety of reasons including little access to necessary capital and no experience managing manufacturing and sales operations.

9.     In early 2014, A. Salvitti, Potynksy, and Mr. Lascelles (collectively, the "Venture Parties") orally agreed to undertake a joint venture (the "Venture") to profit from the sale of a specialized weaponry blade that was designed and patented by A. Salvitti ("Patented Blade").

10.    Pursuant to this agreement, A. Salvitti orally granted Mr. Lascelles an unqualified and exclusive license to manufacture and sell the Patented Blade ("License").

11.    There was never an agreement that A. Salvitti could cancel or revoke the License on a whim and with no notice, and Mr. Lascelles would never have agreed to accept the License and engage with the Venture Parties on that basis.

12.    There was never an agreement that A. Salvitti could revoke Mr. Lascelles' right to sell Patented Blades ordered before revocation of the License, and Mr. Lascelles would never have agreed to accept the License and engage with the Venture Parties on that basis.

13.    In addition to A. Salvitti providing the License, Potynsky was to use his military contacts to generate potential business opportunities for the Patented Blade.

14.    Mr. Lascelles' role was to handle the day-to-day management operations of manufacturing and selling the Patented Blade.

15.    Pursuant to the oral agreement for the Venture, Mr. Lascelles would disburse profits generated from sales of the Patented Blade equally ($33\frac{1}{3}$ % each) among the Venture Parties.

16.    No agreement was ever made between the Venture Parties regarding rights to audit books or access source information.

17.     The Venture realized no profit from the first production; in fact, the Venture realized a loss from the first production.

18.     The loss resulted from poor planning; to make the Patented Blade commercially viable would require significant attention to production and marketing strategy and execution.

19.     In March 2014, Mr. Lascelles and his spouse, Ms. DiSabatino, (without any involvement of the other Venture Parties) began developing a business plan for marketing and distributing the Patented Blade and other products through an online, e-commerce platform. Mr. Lascelles and Ms. DiSabatino developed a marketing and branding strategy; conducted research, contacted, and negotiated with global manufacturers for cost-effective production of, among other products, the Patented Blade; established a digital domain (www.colonelblades.com); built an e-commerce website; established and developed all social media assets; developed a brand logo; and executed numerous related tasks to construct an end-to-end operation for the manufacture, promotion, sale, distribution, web analytics, order fulfillment and customer service for the Patented Blade and related products. Mr. Lascelles paid for all of the associated expenses.

20.     A. Salvitti and Potynsky had no role in constructing this end-to-end operation or paying any of the associated expenses.

21.     Pursuant to the Venture, A. Salvitti and Potynsky were to receive their share of profits generated by sales of the Patented Blade on Mr. Lascelles' newly created platform.

22.     In March 2014, at the suggestion of his tax accountant, Mr. Lascelles formed The Colonel LLC, a Pennsylvania limited liability corporation, to operate the sales and marketing platform Mr. Lascelles and his spouse designed and implemented.

23.     Part of the business of The Colonel LLC is the supply-chain operation for the Patented Blade.

15

24. Mr. Lascelles is the sole member of The Colonel LLC. True and correct copies of the constitutional documents of The Colonel LLC are appended as **Exhibit 1.**

25. "Colonel Blades" is the brand that was developed by Mr. Lascelles and Ms. DiSabatino and subsequently trademarked by The Colonel LLC.

26. On or about October 14, 2014, the e-commerce website, www.colonelblades.com, which Mr. Lascelles and Ms. DiSabatino developed, went live and sales of the Patented Blade and other products began.

27. In or around November 2015, N. Salvitti, who at that time was a student at Temple University Law School, prepared and circulated a draft operating agreement among the Venture Parties (the "2015 Draft Agreement").

28. Though the 2015 Draft Agreement underwent one revision that was circulated among the Venture Parties in January 2016, the 2015 Draft Agreement was never executed.

29. In addition to the fact that many essential points remained to be negotiated in the 2015 Draft Agreement, Potynsky expressly stated that he did not wish to enter a formal agreement; instead, he wanted to continue the profit-sharing Venture and revisit the idea of a more formal business later.

30. Accordingly, it was orally agreed that the Venture Parties would continue the profit-sharing Venture; that Mr. Lascelles would continue selling the Patented Blade through his separate entity, The Colonel LLC; and that the Venture Parties were entitled to share in the profits, if any, generated by The Colonel LLC from the Patented Blades.

31. Thereafter, in January 2016, Mr. Lascelles and Ms. DiSabatino invested significant time and money toward building sales revenue and increasing profitability of the Patented Blade and the other products offered by The Colonel LLC through the website www.colonelblades.com.

The product range of the site included blade sheaths and tactical pens which were not covered by A. Salvitti's intellectual property. This investment included daily oversight of the sales, marketing, distribution, and other operations such as: (i) development and management of the website; (ii) development and management of social media outreach; (iii) order fulfillment; (iv) customer service; (v) development of manufacturing relationship, price negotiation, and contract management; (vi) construction and oversight of timelines; (vii) invoicing; (viii) marketing strategy development; (ix) branding strategy and development; (x) negotiation with vendor platforms (e.g., Amazon, PayPal); and (xi) business development.  These efforts continued through February 2019.

32.    From October 2014 to January 2019, when Mr. Lascelles and Ms. DiSabatino oversaw the marketing operations and supply-chain functions for the Patented Blade, Mr. Lascelles would periodically contact Potynsky to discuss the roles and responsibilities of the respective Venture Parties, review the status of sales, and review inventory planning.

33.    From October 2014 to January 2019, when Mr. Lascelles and Ms. DiSabatino oversaw marketing operations and supply-chain functions for the Patented Blade, A. Salvitti and Mr. Lascelles would meet or speak at least weekly, and often more frequently. A. Salvitti was involved with product testing and development during this time. Mr. Lascelles presented all orders and business updates to A. Salvitti weekly. At no time did A. Salvitti object to the placing of orders with any manufacturer.

34.    At no time during this period did A. Salvitti and Mr. Lascelles verbally discuss ownership or licensing rights of A. Salvitti's patent, or ownership of the marketing platforms Mr. Lascelles and Ms. DiSabatino developed and managed.

35.    Retail sales of the Patented Blade totaled approximately $150,000 in 2017.

36.    Approximately $12,000 of that amount was generated by sales on Amazon.com,

and the balance (approximately $138,000) was generated from sales consummated on the website Mr. Lascelles and his spouse designed and created.

37.     Cash flow from sales of the Patented Blade allowed for profit distributions from the 2017 tax year to the Venture Parties.

38.     In March 2018, A. Salvitti received profit distributions of $10,000 and $5,500 for the 2017 tax year.

39.     In March 2018, Potynsky received a profit distribution of $10,000 for the 2017 tax year. At Potynsky's request, his profit distribution was issued to his fiancée.

40.     A. Salvitti and Mr. Lascelles mutually agreed that the profit distribution to Potynsky would be $10,000, because of his minimal contribution of time and effort.

41.     Thereafter, Mr. Lascelles and Ms. DiSabatino continued to devote significant time and resources to increase sales of the Patented Blade.

42.     Mr. Lascelles began a digital marketing effort through Instagram, and in connection with that effort, Mr. Lascelles hired a part-time contractor to handle the Instagram and other digital marketing functions.

43.     As a result of the digital and other marketing efforts, sales continued to increase. In the first quarter of 2018, sales reached $100,000. Total sales revenue for 2018 was in excess of $900,000 (including sales tax).

44.     The increased sales required additional capital expenditures to acquire the inventory necessary to meet the increased demand.

45.     To finance the manufacture of additional product inventory, Mr. Lascelles obtained the inventory financing from: (i) two separate PayPal loans, each of which Mr. Lascelles personally guaranteed; and (ii) a personal loan from a colleague for $60,000.  Mr. Lascelles used

the proceeds of these borrowings to acquire additional inventory (manufacturing costs) and make partial payment of amounts owed in state taxes. Mr. Lascelles informed A. Salvitti of all these financial decisions and activities.

46.     On September 5, 2018, Potynsky sent an email to Mr. Lascelles, N. Salvitti, and A. Salvitti asking for detailed business information. He wanted email passwords, all contact names, social media platform access credentials, Citadel banking account, and PayPal account access for the business of The Colonel LLC.

47.     When Mr. Lascelles did not provide these details immediately, Potynsky placed a phone call to A. Salvitti stating that he was an "owner of the business" and asserting that he had "every right" to the information he demanded.

48.     On September 13, 2018, Mr. Lascelles received an email from Potynsky cc'ing A. Salvitti and Depot7 and stating that Potynsky wanted to plan a conference call to get a business update.

49.     Depot7 is the United States importer and distributor for The Colonel LLC.

50.     Mr. Lascelles sourced and originated the business relationship with Depot7 in 2015.

51.     Potynsky had never before contacted Depot7; Depot7 had never dealt with Potynsky directly as Mr. Lascelles served as sole point of contact from inception of the relationship with that business entity.

52.     At this juncture, Mr. Lascelles verbally asked Potynsky to refrain from contacting suppliers directly, explaining that the disruption of normal business procedure negatively impacts business transaction and communication.

53.     On or about September 21, 2018, Mr. Lascelles met face-to-face with Potynsky to review certain financial statements related to sales of the Patented Blade by The Colonel LLC.

54.    Potynsky expressed satisfaction with the financial statements at the conclusion of the September 21, 2018 meeting.

55.    In January 2019, Mr. Lascelles attended "Shot Show," a military and law-enforcement trade show held annually in Las Vegas, Nevada. A. Salvitti and Potynsky also attended.

56.    In Las Vegas, Potynsky expressed verbally to certain mutual associates his dissatisfaction with several of Mr. Lascelles' business decisions.

57.    Subsequently while in Las Vegas, Potynsky verbally demanded of Mr. Lascelles, among other things: (i) the Employee Identification Number ("EIN") for The Colonel LLC, (ii) email introductions to all of Mr. Lascelles' supplier contacts; and (iii) a spreadsheet with contact information for each of Mr. Lascelles' supply-chain contacts.

58.    After the Shot Show, Potynsky contacted Mr. Lascelles via phone call and FaceTime calls. When he was unable to reach Mr. Lascelles, he sent Mr. Lascelles multiple threatening text messages.

59.    After the Shot Show, Potynsky contacted Depot7 numerous times by email and voicemails. Potynsky's communications were aggressive and threatening in both demeanor and content.

60.    As a result of Potynsky's harassment, Depot7 engaged a lawyer and sent Potynsky a cease and desist letter.

61.    As a result of Potynsky's harassment, in January 2019, Depot7 contacted Mr. Lascelles and required that the Colonel LLC provide Depot7 with immediate payment in full of all open invoices and open projects. As a result, Mr. Lascelles was forced to secure a loan from PayPal to make immediate payment to Depot7. PayPal loans are underwritten on The Colonel

LLC's sales and Mr. Lascelles' personal credit. PayPal loans are paid from a percentage of sales. If there are no sales, Mr. Lascelles is personally responsible for repayment of the loan.

62.    In addition to Potynsky's harassment of Depot7, Potynsky also contacted the social media coordinator Mr. Lascelles hired for his marketing platform and threatened the social media coordinator with litigation if he did not produce information for The Colonel LLC's Instagram social media platform.

63.    On February 1, 2019, Mr. Lascelles received a letter from the law firm of Greenberg Traurig stating that A. Salvitti had unilaterally revoked the License for the production and sale of the Patented Blade, and demanded that Mr. Lascelles discontinue manufacture and sale of the Patented Blade, despite A. Salvitti having granted his consent to each and every manufacturing order for the Patented Blade, and Mr. Lascelles having personally guaranteed the payment of borrowings made to pay manufacturers for existing orders.

64.    As a result of A. Salvitti's attempted revocation of the License and Potynsky's harassment of The Colonel LLC's importers, suppliers, and distributors, Mr. Lascelles was forced to cancel in progress manufacturing orders that had already been secured by deposits. Upon information and belief, some work on these manufacturing orders had already begun and breakage invoices are expected to be sent by the manufacturers to Mr. Lascelles.

65.    On February 4, 2019, Mr. Lascelles' attorney at the time, Jack Hubbert, sent a letter in response to Plaintiffs' February 1 letter notifying Plaintiffs that their actions have harmed the Venture and The Colonel LLC.

66.    On February 25, 2019, Plaintiffs served Mr. Lascelles with their Complaint and a Motion for Preliminary Injunction that again demanded he immediately cease all sales of the Patented Blade.

21

67. On or about Friday, March 8, 2019, Mr. Lascelles was informed that Potynsky had contacted Fox Knives, the Italian manufacturer of certain folding knives that Mr. Lascelles ordered through The Colonel LLC, seeking to divert shipment of the folding knives from the importer of record, Depot7, to Potynsky.

68. Mr. Lascelles ordered the folding knives and made a deposit of monies to secure the order well before A. Salvitti purportedly revoked the License.

69. Potynsky did not place the order for the folding knives and has not paid any part of the deposit.

70. Potynsky's communication and direction to divert the order have confused the manufacturer, damaged the business relationship with the manufacturer, harmed the business of The Colonel LLC, and harmed the profit interest of the Venture.

71. As a result of Potynsky's harassment, Fox Knives engaged a lawyer and sent Potynsky a cease and desist letter.

72. On Saturday, March 9, 2019, Mr. Lascelles' counsel directed Potynsky, through his counsel, to immediately cease and desist from any further communications with The Colonel LLC's manufacturers and importers.

73. On Saturday, March 9, 2019, in compliance with A. Salvitti's purported revocation of the License, and as demanded by Plaintiffs' Motion for Preliminary Injunction, Mr. Lascelles removed all product under his control from inventory.

74. Accordingly, no Patented Blades under Mr. Lascelles' control, or any other products, are currently for sale on ColonelBlades.com or on Amazon.com.

75. Since ceasing all sales of The Colonel LLC's products, Mr. Lascelles has received numerous emails from wholesalers, social media influencers, and customers inquiring about

purchasing products and asking when The Colonel LLC's products will be available again for sale. Since March 9, 2019, Mr. Lascelles' social media manager has received approximately 15-20 emails per day asking when The Colonel LLC's products will be back in stock. Mr. Lascelles estimates that ceasing sales as a result of Plaintiffs' conduct has caused an ongoing loss of approximately $1,800 - $3,000 per day in sales.

76.    The Colonel LLC has approximately 10,000 items sitting in inventory waiting to be sold. Plaintiffs' actions have forced Mr. Lascelles and The Colonel LLC to forego selling these products.

77.    The Colonel LLC has approximately $120,000 in expenses, debts, and/or anticipated liabilities awaiting payment. Plaintiffs' actions have forced Mr. Lascelles and The Colonel LLC to forego making payments on these debts, expenses and/or liabilities. Mr. Lascelles may be personally liable for some of these debts, expenses, and/or liabilities.

78.    A. Salvitti's and N. Salvitti's purported revocation of the License has harmed Mr. Lascelles, The Colonel LLC, and the Venture, directly damaged Mr. Lascelles' credibility with wholesalers, influencers, customers, importers, suppliers, manufacturers, distributors, and/or contractors and has caused Mr. Lascelles and The Colonel LLC to forego significant sales.

79.    Potynsky's interference with the business relationships of The Colonel LLC's importers, suppliers, manufacturers, distributors, and/or contractors has harmed Mr. Lascelles, The Colonel LLC, and the Venture, directly damaged Mr. Lascelles' credibility with wholesalers, influencers, customers, importers, suppliers, manufacturers, distributors, and/or contractors and has caused Mr. Lascelles and The Colonel LLC to forego significant sales.

80.    Despite Mr. Lascelles' request that Potynsky cease and desist from contacting The Colonel LLC's importers, suppliers, manufacturers, distributors, and/or contractors, Potynsky

continues to contact The Colonel LLC's importers, suppliers, manufacturers, distributors, and/or contractors and continues to harm these business relationships. Upon information and belief, Potynsky again contacted Fox Knives on or about March 13, 2019.

81.     Mr. Lascelles invested nearly five years of time and money to develop the strategies and infrastructure required to realize a profit from the manufacturing and sale of the Patented Blade and other products. He has invested personal assets into The Colonel LLC, borrowed money for which he alone is responsible for repayment, and provided his expertise of 25 years of financial services marketing and business development to the ultimate benefit of the Venture. Thanks largely to Mr. Lascelles' efforts, sales volume of the Patented Blade significantly increased in 2018.

82.     Plaintiffs are wrongfully and unjustly seeking to capitalize on the success of Mr. Lascelles' efforts without providing him with appropriate compensation.

83.     Plaintiffs are wrongfully and unjustly seeking to convert the property of Mr. Lascelles.

## COUNT I: BREACH OF CONTRACT
### (Lascelles v. A. Salvitti and N. Salvitti)

84.     Mr. Lascelles realleges and incorporates herein by reference the allegations set forth above.

85.     The valid and enforceable oral agreement entered into in early 2014 by the Venture Parties consisted of the following: (1) Mr. Lascelles is permitted to manufacture and sell the Patented Blade pursuant to the License; (2) the Venture Parties would split the resulting profits from sales of the Patented Blade, if any, in thirds (the "Oral Agreement").

86.     The Oral Agreement is a valid and enforceable contract.

87.     The License is a valid and enforceable contract.

88.     N. Salvitti consented to the License and was aware of the Oral Agreement.

89.     A. Salvitti has breached, and remains in breach of, the Oral Agreement by refusing to allow Mr. Lascelles to manufacture the Patented Blade pursuant to the License.

90.     A. Salvitti has breached, and remains in breach of, the Oral Agreement by refusing to allow Mr. Lascelles to sell the Patented Blade pursuant to the License.

91.     A. Salvitti's and N. Salvitti's purported revocation of the License without notice was and is a breach of the express and implied covenants of the Oral Agreement and the License.

92.     A. Salvitti's and N. Salvitti's refusal to permit Mr. Lascelles to sell Patented Blades that were manufactured and/or ordered before the License was revoked was and is a breach of the Oral Agreement and the License.

93.     A. Salvitti and N. Salvitti did not act in good faith in revoking the License and breaching the Oral Agreement.

94.     In breaching the Oral Agreement and revoking the License, A. Salvitti and N. Salvitti did not act consistent with Mr. Lascelles' justified expectations of the Oral Agreement and the License.

95.     Mr. Lascelles has suffered injuries and damages, included but not limited to lost profits, caused by A. Salvitti's and N. Salvitti's breaches of the Oral Agreement and revocation of the License.

## COUNT II: UNJUST ENRICHMENT
### (Lascelles v. Plaintiffs)

96.     Mr. Lascelles realleges and incorporates herein by reference the allegations set forth above.

97.     At all times relevant to this litigation, Plaintiffs owed a legal duty to Mr. Lascelles not to enrich themselves unjustly at Mr. Lascelles' expense.

98.     Upon information and belief, Plaintiffs have sold Patented Blades and have not provided the profits to Mr. Lascelles.

99.     By Plaintiffs' wrongful acts and omissions, set forth above, Plaintiffs were and will continue to be unjustly enriched at the expense, and to the detriment, of Mr. Lascelles.

100.    By Plaintiffs' wrongful acts and omissions, set forth above, Plaintiffs commandeered the good will that Mr. Lascelles created to unjustly enrich themselves at Mr. Lascelles' expense.

101.    By Plaintiffs' wrongful acts and omissions, set forth above, Plaintiffs commandeered the products that Mr. Lascelles paid to manufacture to unjustly enrich themselves at Mr. Lascelles' expense.

102.    Mr. Lascelles has suffered injuries and damages caused by Plaintiffs' unjust enrichment.

## COUNT III: CONVERSION
### (Lascelles v. Plaintiffs)

103.    Mr. Lascelles realleges and incorporates herein by reference the allegations set forth above.

104.    At all times relevant to this litigation, Plaintiffs owed a legal duty to Mr. Lascelles not to convert Mr. Lascelles' property to Plaintiffs' own use and benefit.

105.    Upon information and belief, Plaintiffs have sold, given away, or retained Patented Blades and other products of The Colonel LLC for their own use and benefit and have not provided Mr. Lascelles with any profit distribution.

106.    By Plaintiffs' wrongful acts and omissions, set forth above, Plaintiffs converted Mr. Lascelles' property to Plaintiffs' own use and benefit.

107.    Mr. Lascelles has suffered injuries and damages caused by Plaintiffs' conversion

of his property to their own use and benefit.

## COUNT IV: TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Lascelles v. Plaintiffs)

108.    Mr. Lascelles realleges and incorporates herein by reference the allegations set forth above.

109.    Plaintiffs are aware of the contractual relationships entered into between Mr. Lascelles, The Colonel LLC and Depot7.

110.    Plaintiffs are aware of the contractual relationships entered into between Mr. Lascelles, The Colonel LLC, and Fox Knives.

111.    Plaintiffs are aware of the contractual relationships entered into between Mr. Lascelles, The Colonel LLC and other contractors of The Colonel LLC.

112.    Through his threats and repeated unwanted communications, Potynsky has acted purposefully with a specific intent to harm the business relationships between Mr. Lascelles, The Colonel LLC, Depot7, Fox Knives, and other importers, suppliers, manufacturers, distributors, and/or contractors.

113.    There is no privilege or justification for Potynsky's purposeful and harmful actions, including his tortious interference with the business relationships set forth above.

114.    As a result of Potynsky's purposeful and harmful actions, and intentional and tortious interference with these business relationships as set forth above, Potynsky has harmed Mr. Lascelles, The Colonel LLC, and the Venture.

115.    Upon information and belief, A. Salvitti and N. Salvitti participated in or acted in concert with to interfere with the business relationships as set forth above.

116.    Upon information and belief, Plaintiffs' interference with contractual relations is ongoing.

27

117.    Mr. Lascelles and the Colonel LLC have suffered injuries and damages, including but not limited to lost profits, caused by Plaintiffs' conduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Lascelles respectfully requests that this Court:

a.      Award Mr. Lascelles damages in an amount sufficient to compensate him for A. Salvitti's and N. Salvitti's breach of contract;

b.      Award Mr. Lascelles damages in an amount sufficient to compensate him for Plaintiffs' unjust enrichment;

c.      Award Mr. Lascelles damages in an amount sufficient to compensate him for Potynsky's tortious interference with contractual relations; and

d.      Grant such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Mr. Lascelles hereby demands trial by jury on all issues.

**DATED**: April 22, 2019                     Respectfully submitted,


                                             */s Robert N. Feltoon*
                                             Robert N. Feltoon (Pa. Bar No. 58197)
                                             Christopher Lucca (Pa. Bar No. 316225)
                                             rfeltoon@conradobrien.com
                                             CONRAD O'BRIEN PC
                                             Centre Square, West Tower
                                             1500 Market Street, Suite 3900
                                             Philadelphia, Pennsylvania 19102-2100
                                             Telephone: (215) 864-8064
                                             Facsimile: (215) 864-0064
                                             *Counsel for Defendants and Counter Claimant*

## CERTIFICATE OF SERVICE

I certify that on the date set forth below the forgoing Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' Amended Complaint was electronically filed pursuant to the Court's ECF system and the documents are available for downloading and viewing from the ECF system. Notice of this filing will be sent to all parties by operation of the ECF system.

*/s Robert N. Feltoon*
Robert N. Feltoon

Dated: April 22, 2019