IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALFRED SALVITTI, et al. | : | |
| | : | CIVIL ACTION |
| Plaintiffs, | : | NO. 19-00696 |
| | : | |
| v. | : | |
| | : | |
| SCOTT LASCELLES, et al., | : | |
| | : | |
| Defendants. | : | |


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          January 6, 2022

I.    **INTRODUCTION**

Presently before the Court are parties' cross-motions for summary judgment. Plaintiffs Alfred Salvitti and Nico Salvitti (collectively "the Salvittis") patented and designed a knife and partnered with Plaintiff John-David Potynsky (collectively "Plaintiffs"). Plaintiffs seek a declaration that Plaintiffs are members of The Colonel, LLC, an entity at issue in this matter, and that Defendant Scott Lascelles converted Plaintiffs' property. Defendants Scott Lascelles and Dana DiSabatino (collectively "Defendants") seek summary judgment with respect to Plaintiffs' claims for breach of contract (Count II), breach of fiduciary duties (Count III), unjust enrichment (Count IV), conversion (Count V), conspiracy (Count VI), aiding and abetting (Count VII), and money had and received (Count VIII). Defendants

also seek summary judgment with respect to Plaintiffs' claims for injunctive relief and preliminary injunction based on Plaintiffs' breach of contract and breach of fiduciary duties claims (Counts XI, XII).

For the following reasons, Plaintiffs' motion will be denied. Defendants' motion will be granted with respect to Plaintiffs' claims for breach of contract, breach of fiduciary duty, preliminary injunction, injunctive relief, conversion, money had and received, conspiracy, and aiding and abetting. Plaintiffs' claim for unjust enrichment, however, will survive.

## II.  BACKGROUND[1]

In 2013, the Salvittis designed a knife and partnered with Potynsky to produce the knife under the name "Colonel Blades." Potynsky Dep. at 69: 16-25; 70: 1-9, ECF No. 78-4. Potynsky, through a company he co-owned, arranged for 200 knives to be

---

[1]    Because Plaintiffs did not file a separate statement of facts, and because Plaintiffs do not contest Defendants' representation of the facts in their Opposition to Defendants' Motion for Summary Judgment, the facts in this Section are drawn from Defendants' Separate Statement of Undisputed Material Facts as well as the facts stated in Plaintiffs' Motion for Partial Summary Judgment and Plaintiffs' Opposition to Defendants' Motion for Summary Judgment. See Def.'s Statement Undisputed Material Facts, ECF No. 78-1; Pls.' Mot. for Partial Summ. J., ECF No. 77; Pls.' Opp'n to Defs.' Mot. for Summ. J., ECF No. 81. As required at the summary judgment stage, the Court views these facts "in the light most favorable" to the nonmoving party and draws "all reasonable inferences" in that party's favor. Young v. Martin, 801 F.3d 172, 174 n.2 (3d Cir. 2015).

produced. At the end of 2013, Plaintiffs reached out to
Lascelles to assist with the marketing and sales of Colonel
Blades. The Salvittis, Potynsky, and Lascelles orally agreed to
work together to sell the 200 knives that remained from the
initial production.

Since 2013, Lascelles has managed the day-to-day operations
of marketing Colonel Blades, including managing internet sales,
working with manufacturers, and distributing the product.
Lascelles also involved his spouse, DiSabatino, in developing a
business plan. In early 2014, Lascelles was advised by his
accountant that it would be beneficial to form a limited
liability company ("LLC") to facilitate the management of
Colonel Blades. In March 2014, the parties agreed to form an LLC
to help manage the production of Colonel Blades.

On March 28, 2014, Lascelles registered The Colonel, LLC
with the Pennsylvania Department of State and listed himself as
the sole member. The tax liability of The Colonel, LLC flowed
through Lascelles' personal taxes. Lascelles managed the day-to-
day operations of The Colonel, LLC and maintained a Citadel bank
account on behalf of The Colonel, LLC. DiSabatino was tasked
with managing several operational activities of The Colonel, LLC
including website development, social media campaigns, e-mail
campaigns, and contracting with vendors. Presently, the parties

dispute whether the parties agreed that Plaintiffs would be made members and/or owners of The Colonel, LLC.

The parties never formally executed an agreement that provided Plaintiffs would become members of The Colonel, LLC. In 2015, the parties circulated a draft agreement that contemplated forming a new legal entity to sell Colonel Blades with Plaintiffs and Lascelles as members. The parties, however, did not formally execute this agreement. Later, in 2018, the parties circulated a draft agreement that contemplated Plaintiffs becoming members of The Colonel, LLC. The parties never formally executed this agreement either.

The parties also did not formalize an agreement that provided how the parties would split any profits from Colonel Blades. Defendants admit there was an understanding that the Salvittis were to receive 1/3 of the profits, Potnysky was to receive 1/3 of the profits, and Lascelles was to receive the remaining 1/3. However, the parties did not memorialize a profit-sharing agreement in writing, nor did they specify the definition of "profits" or when the profits would be split.

Lascelles did not distribute any profits from Colonel Blades between 2013 and 2018 because the parties agreed that any revenue should be rolled over to purchase more inventory. Lascelles made a profit distribution in spring of 2018. Alfred Salvitti received $10,000, Potynsky received $10,000 and, in

4

lieu of Lascelles receiving a distribution, DiSabatino received a payment of $15,500. Lascelles contends that DiSabatino's distribution intended to cover Lascelles' distribution and services DiSabatino performed on behalf of the LLC. Plaintiffs argue that the $15,500 payment to DiSabatino was improper. Lascelles did not cause any additional profits to be distributed because, prior to filing the present suit, Plaintiffs issued a demand that no assets be moved or disposed of in any way.

On February 18, 2019, Plaintiffs filed suit. Plaintiffs brought the following claims: (1) breach of fiduciary duties against Lascelles, (2) breach of contract against Lascelles, (3) unjust enrichment against Lascelles and DiSabatino, (4) conversion against Lascelles and DiSabatino, (5) aiding and abetting against DiSabatino, (6) money had and received against DiSabatino, (7) claims for injunctive relief with respect to Plaintiffs' claims for breach of contract and breach of fiduciary duties against Lascelles, and (8) claims for preliminary injunction with respect to Plaintiffs' claims for breach of contract and breach of fiduciary duties against Lascelles. Lascelles filed counterclaims against Plaintiffs for (1) breach of contract, (2) unjust enrichment, (3) conversion, and (4) tortious interference with contractual relations.

Plaintiffs seek a declaration that they are members of The Colonel, LLC and that Defendants converted property owed to

5

Plaintiffs and The Colonel LLC. Defendants seek summary judgment on all of Plaintiffs' claims. The parties do not seek summary judgment with respect to any of Defendants' counterclaims.[2]

## III. LEGAL STANDARD

Summary judgment is "appropriate only when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Physicians Healthsource, Inc. v. Cephalon, Inc., 954 F.3d 615, 618 (3d Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). A fact is material "if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is genuine "if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. If the movant meets this obligation, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. At the summary judgment stage, the

---

[2]     This Court previously had subject matter jurisdiction over this matter as Plaintiffs had asserted claims under 35 U.S.C. § 1, et seq. for ongoing patent infringement. The parties, by way of stipulation, agreed to dismiss those claims (Counts I, IX, X). See Stip., ECF No. 63. As the parties have already concluded discovery in this matter, in the interest of justice, this Court will continue to exercise supplemental jurisdiction over the remaining state law claims in this case.

Court must view the facts "in the light most favorable to" the nonmoving party and "draw all reasonable inferences in favor" of that party. <u>Young v. Martin</u>, 801 F.3d 172, 174 n.2 (3d Cir. 2015).

The guidelines governing summary judgment are identical when addressing cross-motions for summary judgment. <u>See</u> <u>Lawrence v. City of Phila</u>., 527 F.3d 299, 310 (3d Cir. 2008). When confronted with cross-motions for summary judgment, "[t]he court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." <u>Schlegel v. Life Ins. Co. of N. Am</u>., 269 F. Supp. 2d 612, 615 n.1 (E.D. Pa. 2003) (alteration in original) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 2720 (3d ed. 1998)).

## IV.  DISCUSSION

### A. Membership in The Colonel, LLC: Plaintiffs' Motion for Partial Summary Judgment and Defendants' Motion for Summary Judgment as to Plaintiffs' Claim for Breach of Fiduciary Duties

Plaintiffs' motion for partial summary judgment, Plaintiffs' claim for breach of fiduciary duty (Count III), and Plaintiffs' claim for preliminary injunction and injunctive relief with respect to the issue of breach of fiduciary duty (Counts XI, XII) fundamentally raise the same questions: was the

Colonel LLC formed during the telephone call in March 2014 between the Salvittis, Potnysky, and Lascelles, and did the Salvittis and Potnysky become members of The Colonel, LLC along with Lascelles? If so, Defendants could be liable to Plaintiffs for breaching their fiduciary duties to Plaintiffs. If not, Defendants cannot be liable to Plaintiffs because Plaintiffs were never members of the LLC.

Plaintiffs have moved for summary judgment and seek a declaration that they are members of The Colonel, LLC. In turn, Defendants have moved for summary judgment on Plaintiffs' claim for breach of fiduciary duties. Because these motions are mirror images of one another, they are predicated on the same set of facts, and subject to the same legal standard, the Court will treat both motions as cross-motions for summary judgment.

1. Plaintiffs' Motion for Partial Summary Judgment

In their motion for partial summary judgment, Plaintiffs seek a declaration that Alfred and Nico Salvitti have a one-third interest in The Colonel, LLC, that Potynsky has a one-third interest in The Colonel, LLC, that Lascelles is enjoined from making any contrary representations, and that Plaintiffs are entitled to rights in company management and property. Plaintiffs ultimately seek a declaration that they are members of The Colonel, LLC.

Under Pennsylvania law, where multiple persons agree to become members of an LLC, the "persons become members as agreed by those persons and the organizer before the formation of the company." 15 Pa. C.S. § 8841(b). The organizing person "acts on behalf of the persons in forming the company and may be, but need not be, one of the persons." Id. Plaintiffs argue that the Salvittis, Potynsky, and Lascelles had a telephone conference on March 9, 2014 during which the parties agreed to form a Pennsylvania LLC with the Salvittis, Potynsky, and Lascelles as members/owners. Thereafter, Lascelles listed himself as the sole member of The Colonel, LLC when Lascelles registered the entity with the Pennsylvania Department of State. Plaintiffs contend that the "fact that [D]efendant Lascelles failed to include [their] names in the documentation that he filed with the Department of State does not, under Pennsylvania's limited liability company act, deprive them of their membership and ownership rights." Pls.' Mot. for Summ. J. at 7, ECF No. 77-1.[3]

---

[3]   Plaintiffs purport to be members of The Colonel LLC despite not having been listed as members on the LLC's formation documents. Pennsylvania law does not include an explicit requirement that all members be listed on the LLC's articles of organization—only the LLC's organizer(s) must be listed. See, e.g., 15 Pa. C.S. § 8841; see also Certificate of Organization-Domestic Limited Liability Company, PENNSYLVANIA DEPARTMENT OF STATE BUREAU OF CORPORATIONS AND CHARITABLE ORGANIZATIONS, available at https://www.dos.pa.gov/BusinessCharities/Business/RegistrationForms/Documents/Updated%202017%20Registration%20Forms/Domestic%20Limited%20Liability%20Company/15-8821%20Cert%20of%20Org-Dom%2LLC.pdf. Regardless, as discussed below, Plaintiffs do not

Defendants do not contest this. Defendants riposte that there is no evidence that at any time the parties agreed that Plaintiffs would be members of The Colonel, LLC.

Plaintiffs' argument hinges on the supposed oral agreement that was reached between the parties in March 2014. In support, Plaintiffs point to allegations in their Amended Complaint. See, e.g., Pls.' Mot. for Partial Summ. J. at 2, ECF No. 77-1 (explaining that during the alleged March 9, 2014 call "[P]laintiffs and [Lascelles] agreed to form a Pennsylvania limited liability company, with each party being a member/owner thereof.") (citing Am. Compl. at ¶ 12). Plaintiffs also contend that they "believed until 2018 that they were members/owners of 2/3 of the company" because "in communications directly and indirectly with [D]efendant Lascelles, their understanding was at every turn affirmed by [D]efendant Lascelles." Id. at 4. Other than the subjective belief that the parties had entered into a membership agreement, Plaintiffs do not provide any evidence showing that an agreement was reached during the March 9, 2014 call.

Beyond the contention that a call occurred in March 2014, Plaintiffs cite to various draft agreements and alleged comments

---

point to any material facts in the record to suggest that the parties agreed Plaintiffs would become members of the LLC in March 2014.

10

made by Lascelles after 2014 that lack relevance and fail to
support the notion that the parties entered into an agreement
during the call. For example, Plaintiffs point to an unsigned
meeting agenda prepared in advance of Plaintiffs' meeting with
Lascelles that stated Lascelles "need[s] to set up an LLC in all
our names." Id. at 2 (quoting Lascelles Dep. Ex. 4, ECF No. 77-
2). Plaintiffs also point to an unsigned draft of an ownership
agreement from 2015 in which the parties are listed as members
of an unnamed LLC. Further, Plaintiffs point to Lascelles'
deposition testimony in which he agreed that the "ownership
agreement should reflect equal ownership interest." Lascelles
Dep. 296: 17-21 & Ex. 21, ECF No. 77-2. Finally, Plaintiffs
point to a single e-mail from August 31, 2015, over a year after
the purported March 9, 2014 phone call, in which Lascelles wrote
to a potential business partner regarding an agreement involving
Colonel Blades and noted that he had to have a discussion with
Plaintiffs as they have a vote regarding whether to go forward
with the agreement. This evidence does not raise an inference
for which a reasonable jury could find that the parties entered
into a membership agreement in March 2014.[4]

---

[4]    Defendants dispute that Plaintiffs became members of the
LLC during the March 2014 call, and argue, in the alternative,
that even if the parties had orally agreed that Plaintiffs would
become members, any potential oral agreement was never
memorialized, so Plaintiffs did not become members of The
Colonel, LLC at the time it was formed. Defendants point to

Because "it is inappropriate to grant summary judgment in favor of a moving party who bears the burden of proof at trial unless a reasonable juror would be compelled to find its way on the facts needed to rule in its favor on the law," Plaintiffs' motion fails. El v. Southeastern Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007); see also Kapiel v. Ogg, Codes, Murphy & Ignelzi, LLP, 297 F. App'x 192, 193 (3d Cir. 2008) (noting the same).

   2. Defendants' Motion for Summary Judgment: Plaintiffs'
      Claim for Breach of Fiduciary Duties

Plaintiffs bring a claim for breach of fiduciary duties against Lascelles. Plaintiffs allege that Lascelles breached the fiduciary duties of good faith, loyalty and care to The Colonel, LLC and to Plaintiffs as members of The Colonel, LLC. Pursuant to 15 Pa. C.S.A. § 8849.1(a), a "member of a member-managed limited liability company owes to the company and . . . the other members the duties of loyalty and care." 15 Pa. C.S.A. §

---

Lascelles' deposition testimony in which he testified that his "original intention was to set up an LLC in all of our names" but "I spoke with my accountant and he advised me not to." Lascelles Dep. 119: 2-4, ECF No. 77-2. Lascelles testified that he told Plaintiffs of the advice he received. Id. at 119: 1-15. Further, Defendants point to the deposition of Potynsky in which he agreed that "[Lascelles] was the only initial member of the company." Potynsky Dep. at 103: 3-11, ECF No. 78-4. Potnysky also testified that he "knew that [Lascelles] had filed the [LLC registration] himself" specifically that "he had put his name on [t]here and said, hey, I'm the only member." Id. at 111:4-112:11.

8849.1(a) (emphasis added). Thus, this claim hinges on Plaintiffs' membership in The Colonel LLC.

Defendants move for summary judgment on this claim, and, as noted, contest Plaintiffs' membership in the LLC. To dispute Plaintiffs' membership interest in the LLC, Defendants rely on the testimony of Potynsky and Alfred Salvitti. In his deposition, Potnysky admits that he was aware that, at the time of formation, the only member of The Colonel, LLC was Lascelles. Potynsky Dep. at 101:16-102:2. 130-3-11, ECF No. 78-4. Additionally, in his deposition, Alfred Salvitti testified that he became aware that Lascelles was the sole member of The Colonel, LLC by early 2015. A. Salvitti Dep. 53: 13-24; 54: 1-7, ECF No. 78-4. As noted above, Plaintiffs do not cite to any evidence from the factual record that supports that the parties agreed, or consented to, Plaintiffs being members of The Colonel, LLC in either their motion for partial summary judgment or their opposition to Defendants' motion for summary judgment.

Defendants further argue that Plaintiffs did not become members of The Colonel, LLC at a later point. Under Pennsylvania law, a non-member may become a member of a limited liability (1) "by action of the organizer if the company does not have any members," (2) "as provided in the operating agreement," (3) "as the result of a transaction effective under Chapter 3 (relating to entity transactions)," (4) "with the affirmative vote or

13

consent of all the members," or (5) "as provided in section 8871(a)(3) (relating to events causing dissolution)." 15 Pa. C.S.A. § 8841(d). Defendants contend that there is no evidence that any of these conditions have been satisfied that would support a finding that Plaintiffs became members at a later point. Plaintiffs do not contest this. Thus, Plaintiffs are unable to raise a genuine factual dispute with respect to this claim.

Additionally, and independent of whether Plaintiffs are members of the LLC, Plaintiffs purport to bring a derivative breach of fiduciary duties claim on behalf of the LLC against Lascelles. Defendants argue that though Plaintiffs claim they brought this suit "in a derivative capacity against the lawsuit," the damages Plaintiffs seek is an award to Plaintiffs. Am. Compl. ¶ 93, ECF No. 24. Further, Plaintiffs have not satisfied the requirements to bring a derivative suit under Federal Rule of Civil Procedure 23.1(b) or 15 Pa. C.S.A. § 8882.

Both Federal Rule of Civil Procedure 23.1(b) and 15 Pa. C.S.A. § 8882 require that to maintain a derivative suit, the plaintiff must be a member of the entity on behalf of which they bring the suit. Because the factual record does not support that Plaintiffs were members of The Colonel, LLC, Plaintiffs cannot maintain a derivative suit on behalf of the LLC. See Tollhouse Investments, LLC v. Lau, No. 16-5665, 2017 WL 2972680, at *5

14

(E.D. Pa. July 12, 2017) ("[A] derivative claim may only be brought by a 'member of the company . . . who is duly authorized to sue by the vote of members entitled to vote who do not have an interest in the outcome of the suit that is adverse to the interest of the company.'") (quoting 15 Pa. Cons. Stat. § 8992(1)) (omission in original). Accordingly, Defendants' motion for summary judgment will be granted with respect to the claim of breach of fiduciary duty.

### B. Defendants' Motion for Summary Judgment: Remaining Claims

1. Breach of Contract

Plaintiffs bring a claim for breach of contract against Lascelles. Plaintiffs' claim hinges on alleged breaches of oral agreements between the parties as to how The Colonel, LLC was to be managed.[5] Specifically, Plaintiffs contend that Lascelles has breached an alleged agreement by: (1) withholding profits owed to Plaintiff, (2) failing to allow Plaintiffs' to inspect the books and records of The Colonel, LLC, (3) causing the Colonel, LLC to take out loans for Lascelles' benefit, (4) using company funds and commingling his own assets with his personal assets, and (5) denying Plaintiffs' access to company inventory.

To establish a claim for breach of contract under Pennsylvania law a party must establish "(1)

---

[5]    This claim does not hinge on Plaintiffs' membership in The Colonel LLC.

the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." Clapps v. State Farm. Ins. Co., 447 F. Supp. 3d 293, 297 (E.D. Pa. 2020) (quoting Orange v. Starion Energy PA, Inc., 711 F. App'x 681, 683 (3d Cir. 2017)) (applying Pennsylvania law). The existence of a contract requires "(1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009) (citing Blair v. Scott Speciality Gases, 283 F.3d 595, 603 (3d Cir. 2002)) (applying Pennsylvania law).

Defendants contend that the parties never entered into a written agreement with respect to profit-sharing or the management of the LLC. Plaintiffs do not contest this.[6] Instead,

---

[6]     Potynsky and Lascelles did enter into a written agreement in December 27, 2013, which provided for the amount of capital the parties were to initially invest in the production of Colonel Blades and noted that "the duration of this contract will be for 3 consecutive production runs" and "[a]ll proceeds are to be used for the next production run." Defs.' Mot. for Summ. J. Ex. 8, ECF No. 78-7. However, the Salvittis were not parties to this contract. Id. Additionally, there was no provision that provided that Plaintiffs had access to books and records or inventory, or provided for the manner in which Lascelles was to manage The Colonel, LLC. In fact, this contract was established prior to the date in which The Colonel, LLC was registered with the Pennsylvania Department of State. The contract also expired in 2016 after the third production run. Lascelles Dep. at 90:12-21, ECF No. 78-4.
     In 2015, the parties drafted an operating agreement to form a limited liability company, with the Plaintiffs, Lascelles, and another individual named Tom Spooner. Defs.' Mot. For Summ. J.

Plaintiffs contend that the parties entered into a separate oral agreement that established their contractual rights to receive profits from sales of Colonel Blades and to allow Plaintiffs to inspect the books and records of The Colonel, LLC.

Defendants admit that Lascelles has never disputed that the Parties "agreed orally to share 'profits' from blade sales on a 1/3, 1/3, 1/3 basis at some point and in some manner" but argue that "this undefined understanding is the extent of the Parties' oral agreement with respect to profits, and lacks sufficient specificity to support Plaintiffs' claim for breach of contract as a matter of law." Defs.' Mot. For Summ. J. at 8-9, ECF No. 78-2. Specifically, Defendants argue that a "sufficiently definite" agreement was never reached to establish a legally enforceable contract. Id. at 9.

The party relying on an oral contract has the burden of proving its existence. See Edmondson v. Zetusky, 674 A.2d 760, 764 (Pa. Commw. Ct. 1996). In "determining the existence of an

---

Ex. L, ECF No. 78-11. The proposed agreement had a profit-sharing provision, but the parties did not sign or formally enter into this agreement. Additionally, in 2018, the parties drafted another operating agreement in which the parties sought to establish a limited liability company known as Colonel Blades, LLC. Defs.' Mot. For Summ. J. Ex. O, ECF No. 78-12. However, the parties did not sign or formally enter into this agreement. Defendants contend that Lascelles did not manifest an intention to be bound to the proposed agreements as Lascelles had outlined numerous issues that needed to be resolved with respect to the proposed agreements. Defs.' Mot. For Summ. J. Ex. P, ECF No. 78-12.

alleged oral contract, the threshold inquiry is whether the
parties manifested mutual intent to be bound by the terms of the
agreement." Ecore Int'l., Inc. v. Downey, 343 F. Supp. 3d 459,
488 (3d Cir. 2018) (citing Guzzi v. Morano, No. 10-1112, 2013 WL
4042511, at *10 (E.D. Pa. Aug. 8, 2013)) (applying Pennsylvania
law). Rather than considering the subjective intent of the
parties, the Court must consider "the intent a reasonable person
would apprehend in considering the parties' behavior." Id.
(quoting Landan v. Wal-Mart Real Est. Bus. Trust, No. 12-926,
2015 WL 1491257, at *6 (W.D. Pa. Mar. 31, 2015)). "In cases
involving oral contracts, 'courts must look to surrounding
circumstances and course of dealing between the parties in order
to ascertain their intent.'" Id. (citing Legendary Art, LLC v.
Godard, 888 F. Supp. 2d 577, 585 (E.D. Pa. 2012)). If the facts
are in dispute, "'the question of whether a contract exists is
for the jury to decide.'" Id. at 487 (citing Quandry Sols. Inc.
v. Verifone Inc., No. 07-097, 2009 WL 997041, at *5 (E.D. Pa.
Apr. 13, 2009)). But, "[t]he question of whether an undisputed
set of facts establishes a contract is a matter of law." Id.
(citing Quandry, 2009 WL 997041, at *5).

Defendants contend that the terms of the oral agreement
fail for indefiniteness. Defendants argue that the parties never
specifically agreed on how profits would be calculated or when
profits would be distributed. When there is no evidence of an

"agreement or even a discussion as to <u>any</u> of the essential terms
of an alleged bargain, such as time or manner of performance, or
price or consideration, the 'agreement' is too indefinite for a
party to <u>reasonably</u> believe that it could be enforceable in an
action at law." <u>Lackner v. Glosser</u>, 892 A.2d 21, 31 (Pa. Super.
Ct. 2006) (emphasis in original).

   For support, Defendants point to the deposition testimony
of Potynsky in which he admits that there was no agreement as to
how the profits would be calculated or distributed. Potynsky
testified that the definition of profits may vary. Potynsky Dep.
at 69: 16-23; 70: 22-25; 71: 1-5, ECF No. 78-4. Additionally,
Potynsky agreed that the parties did not determine <u>when</u> profits
would be distributed. <u>Id.</u> at 128: 23-25; 129: 1-8. Defendants
argue that the contract fails for indefiniteness because it
would require the court to divine the contractual terms that the
parties had not agreed upon. <u>See</u> <u>Lackner v. Glosser</u>, 892 A.2d
21, 30 (Pa. 2006) ("An enforceable contract requires, among
other things, that the terms of the bargain be set forth with
sufficient clarity.") (citation omitted).

   "The fact that an agreement omits an essential term . . .
'does not vitiate contract formation if the parties otherwise
manifested their mutual assent to the agreement and the terms of
that agreement are sufficiently definite[.]'" <u>Ecore</u>, 343 F.
Supp. 3d at 499 (citing <u>ATACS Corp. v. Trans World Comm., Inc.</u>,

19

155 F.3d 659, 667 (3d Cir. 1998)). However, when there is no evidence of an "agreement or even a discussion as to <u>any</u> of the essential terms of an alleged bargain, such as time or manner of performance, or price or consideration, the 'agreement' is too indefinite for a party to <u>reasonably</u> believe that it could be enforceable in an action at law." <u>Id.</u> (citing <u>Lackner</u>, 892 A.2d at 31) (emphasis in original).

Though Plaintiffs argue the terms of the agreement are sufficiently definite, Plaintiffs are unable to point to any evidence in the factual record that supports that there was a specific agreement as to the definition of profits or time of performance. Plaintiffs claim that the "parties admit the key and essential terms of their agreement to form a venture to sell knives . . . and to divide the profits," but only cite to paragraphs of the Amended Complaint and Amended Counterclaims to support their argument.[7] Pls.' Opp. to Defs.' Mot. for Summ. J. at 2, ECF No. 81.

---

[7]    Even the parties' course of conduct does not support the existence of a specific agreement with respect to profit distribution. As Defendants point out, Potynsky testified that Lascelles did not make a profit distribution between 2014 and early 2018. Potynsky Dep. at 92:23-93:7, ECF No. 78-4. Though a distribution was made in spring 2018, "[t]he distribution . . . was not even made according to the 1/3, 1/3, 1/3 arrangement the Parties had discussed a few years earlier" and on which Plaintiffs' argument is based. Defs.' Proposed Reply at 5, ECF No. 83-1.

Overall, Plaintiffs do not point to anything in the factual record that supports the existence of a definitive oral agreement defining the terms of the profit-sharing between the parties. "Naked assertions in the pleadings are insufficient to withstand summary judgment." Viger v. Commercial Ins. Co. of Newark, N.J., 707 F.2d 769, 771 (3d Cir. 1983). Thus, there is nothing in the factual record that supports the existence of a genuine issue of material fact.

Further, Defendants argue that an alleged oral agreement with respect to Plaintiffs' rights to inspect books and records also fail for indefiniteness. Defendants argue that there is "no signed agreement that Plaintiffs can point to in support of this claim." Defs.' Mot. for Summ. J. at 14, ECF No. 78-2. Defendants point to the deposition testimony of Potynsky in which Potynsky admits that the parties did not enter into an official agreement with respect to how the parties would keep or maintain their books and records. Potynsky Dep. 77: 21-25l; 78: 1-6, ECF No. 78-4.

Plaintiffs do not contest this argument in their opposition to Defendants' motion. Plaintiffs additionally do not argue that an oral agreement existed that established Plaintiffs' rights to inspect inventory or controlled how Lascelles was to manage the company's funds. Accordingly, Plaintiffs have failed to meet their burden that an oral agreement exists as no reasonable

factfinder could conclude that the parties entered into a contract with sufficiently definite terms. Thus, Defendants' motion for summary judgment will be granted with respect to this claim.[8]

### 2. Preliminary Injunction and Injunctive Relief

Plaintiffs bring claims for a preliminary injunction and injunctive relief against Lascelles. Plaintiffs' claims for a preliminary injunction and injunctive relief are based on Plaintiffs' claims for breach of fiduciary duties and breach of contract. Claims for injunctive relief are "remed[ies], not . . . independent cause[s] of action." Davis v. Corizon Health, Inc., No. 14-1490, 2014 WL 5343617, at *2 (E.D. Pa. Oct. 21, 2014) (first citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 311 (1982), then citing  In re Shop-Vac Mktg. & Sales Practices Litig., 964 F.Supp.2d 355, 365 (M.D. Pa. 2013)). Because Defendants' motion will be granted with respect to Plaintiffs' claims for breach of fiduciary duties and breach of contract, summary judgment will be granted with respect to Plaintiffs' claims for a preliminary injunction and injunctive relief as well.

---

[8]     In the alternative, Defendants argue that Plaintiffs' breach of contract claim must fail because there is no evidence that Plaintiffs have been damaged. As Plaintiffs have failed to meet their burden to establish the existence of an oral agreement, the Court need not consider this argument.

3. Unjust Enrichment

Plaintiffs bring a claim for unjust enrichment against Lascelles and DiSabatino for alleged failure to distribute profits.[9] Under Pennsylvania law, to establish a claim for unjust enrichment Plaintiffs must prove there were "(1) benefits conferred on defendant[s] by plaintiff[s]; (2) appreciation of such benefits by defendant[s]; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant[s] to retain the benefit without payment of value . . . ." Hollenshead v. New Penn Financial, LLC, 447 F. Supp. 3d 283, 292 (E.D. Pa. 2020) (citing Durst v. Milroy Gen Contracting, Inc., 52 A.3d 357, 360 (Pa. Super. Ct. 2012)). "Pennsylvania law does not require that the alleged benefit in an unjust enrichment claim be conferred directly by the plaintiff upon the defendant, so long as the benefit is not

---

[9]   This claim is in the alternative to that of breach of contract because "[i]n Pennsylvania, the doctrine [of] unjust enrichment is "inapplicable when the relationship between the parties is founded on a written agreement or express contract." Cosby v. American Media, Inc., 197 F. Supp. 3d 735, 745 (E.D. Pa. 2016) (citing Benefit Tr. Life Ins. Co. v. Union Nat'l Bank, 776 F.2d 1174, 1177 (3d Cir.1985)) (applying Pennsylvania law). "Despite this restriction, '[a] plaintiff is permitted to plead alternative theories of recovery based on breach of contract and unjust enrichment in cases where there is a question as to the validity of the contract in question.'" Jacoby Donner, P.C. v. Arisone Realty Capital, LLC, No. 17-2206, 2020 WL 5095499, at *13 (E.D. Pa. Aug. 28, 2020) (citing Premier Payments Online, Inc. v. Payment Sys. Worldwide, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012)) (internal quotation marks omitted).

too attenuated to support equitable relief." <u>Aetna Inc. v. Insys
Therapeutics, Inc.</u>, 324 F. Supp. 3d 541, 559 (E.D. Pa. 2018).
"The application of the doctrine depends on the particular
factual circumstances of the case at issue." <u>Hollenshead</u>, 447 F.
Supp. 3d at 292 (citing <u>Durst</u>, 52 A.3d at 360)). This
determination depends "not on the intention of the parties, but
rather on whether the defendant has been unjustly enriched." <u>Id.</u>
(citing <u>Durst</u>, 52 A.3d at 360).

Defendants initially argue that they are not the proper
defendants to this claim. Defendants argue that The Colonel, LLC
maintains its own bank account and so the LLC "received any
benefit conferred by failing to distribute 'profits'" rather
than Defendants. Defs.' Mot. for Summ. J. at 30, ECF No. 78.
Though there is an account in the LLC's name, Lascelles is the
sole signatory. Lascelles is also the sole registered member of
the LLC.

Plaintiffs argue that Defendants ran the LLC through their
personal tax return, and so they cannot be deemed independent
from the management of The Colonel, LLC. Plaintiffs point to
evidence of Defendants' joint tax returns and that Lascelles
made personal payments to DiSabatino for the purposes of
managing the LLC. Plaintiffs also point to evidence of checks
made payable to Lascelles personally that he deposited in his
personal bank account, rather than a company account.

Finally, Plaintiffs point to the expert report of Michael D. Rountree, C.P.A., for further support that Defendants were conferred a benefit. After reviewing the bank statements of The Colonel, LLC and ledgers provided by Defendants' accountant, Mr. Rountree opined that that Defendants commingled company and personal funds and "failed to maintain books and records for The Colonel, LLC and to observe customary LLC formalities to run operations of The Colonel, which failures are gross deviations from sound accounting principles." Pls.' Mot. for Summ. J. Ex. C, ECF 77-4.[10] Thus, Plaintiffs create a genuine dispute as to whether the Defendants may have benefitted directly from a benefit conferred by Plaintiffs.

Defendants argue, in the alternative, that even if Defendants are the proper parties, Lascelles "was prepared to cause the LLC to make another distribution for the 2018 tax year, but Plaintiffs filed this lawsuit in early 2019 and demanded that no assets be disbursed." Defs.' Mot. for Summ. J.

---

[10]   In response, Defendants seemingly embed a <u>Daubert</u> motion to exclude the report of Michael Rountree, contending that Mr. Rountree's conclusions are deficient, and claiming that his calculations were incorrect and that he failed to review relevant deposition testimony from Alfred Salvitti, Ptoynsky, and Lascelles for pertinent information. However, as Plaintiffs' opposition is not entirely premised on Mr. Rountree's report, even without it, Plaintiffs have raised a genuine dispute of a material fact. Before trial, Defendants may file a motion in limine to contest the admissibility of the report of Mr. Rountree.

at 31, ECF No. 78-2. However, Plaintiffs' claim is not based solely on potential distribution of profits in 2018 and 2019. Thus, this argument is not persuasive.

As Plaintiffs have pointed to evidence that supports Defendants were potentially unjustly benefitted, a reasonable jury could find that Defendants have been unjustly enriched. Accordingly, Defendants' motion will be denied with respect to this claim.[11]

### 4. Conversion

In their motion for partial summary judgment, Plaintiffs seek a declaration that Lascelles converted profits from Colonel Blades belonging to Plaintiffs. Defendants oppose Plaintiffs' motion and also seek summary judgment with respect to this claim.

Plaintiffs argue that Lascelles improperly co-mingled funds from The Colonel, LLC with his personal funds and has kept company profits for himself. Under Pennsylvania law, "[c]onversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." Bernhardt v.

---

[11]   Plaintiffs' claim only survives to the extent that Plaintiffs bring the claim in their personal capacity. As noted above, Plaintiffs have not met the requirements to bring this claim on behalf of The Colonel, LLC.

<u>Needleman</u>, 705 A.2d 875, 878 (Pa. Super. Ct. 1997) (citations omitted). Plaintiffs must have had an interest in the property at the time it was allegedly converted. <u>Id.</u>

Plaintiffs contend that Lascelles deposited payments for company property into his personal bank account in order to keep profits for himself. Plaintiffs premise their argument on the notion that Plaintiffs are members of the LLC, but explain that "if they are not member of the LLC, the defendants have converted plaintiffs' profits." Pls.' Opp. to Defs.' Mot. for Summ. J. at 9, ECF No. 81.[12] However, Plaintiffs do not explain how, as non-members of the LLC, they had a right to the assets at the time in which the profits were allegedly converted. <u>See Kia v. Imaging Sciences Intern., Inc.</u>, 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010) (applying Pennsylvania law and noting that there must be some evidence on the record that, at the point of the alleged conversion, the money belonged to plaintiffs). Accordingly, Plaintiffs' motion seeking a declaration that Lascelles converted the LLC's profits will be denied. <u>See Binns v. Flaster Greenberg, P.C.</u>, 480 F. Supp. 2d 773, 781-82 (E.D. Pa. 2007) (applying Pennsylvania law granting the defendant's

---

[12]   Plaintiffs' claim is premised on the notion that Defendants have converted profits belonging to Plaintiffs personally because the Court has previously found that Plaintiffs have not provided sufficient evidence to suggest Plaintiffs are members of The Colonel, LLC. <u>See</u> <u>supra</u> section IV.A.

motion for summary judgment because the plaintiff had not offered evidence that "fees owed to him establish[ed] rights subject to conversion.").

Because Plaintiffs do not raise a genuine dispute as to any material fact in response to Defendants' motion for summary judgment, and no reasonable jury could find for Plaintiffs, Defendants' motion will be granted with respect to this claim.

### 5. Money Had and Received

Plaintiffs bring a claim for money had and received against DiSabatino arguing she improperly received checks from the LLC and funds were contributed to her personal IRA account. "A cause of action for money had and received entitles a party to relief where money is wrongfully diverted from its proper use and that money subsequently falls into the hands of a third person who has not given valuable consideration for it." Solomon v. Gibson, 615 A.2d 367, 369 (Pa. Super. Ct. 1992) (citation omitted). However, the claim depends on the notion that "one has in his hands money which in equity and good conscience belongs and ought to be paid to another . . . ." Takeda Pharm. U.S., Inc. v. Spireas, 400 F. Supp. 3d 185, 213-14 (E.D. Pa. 2019) (quoting Hughey v. Robert Beech Assocs., 378 A.2d 425, 427 (Pa. Super. Ct. 1977)) (emphasis added).

Plaintiffs must point to evidence to suggest that the money DiSabatino allegedly received was diverted from its proper use

when DiSabatino received it. Plaintiffs argue that the money was diverted from its proper use because Plaintiffs had ownership rights over the profits. However, like with their claim for conversion, Plaintiffs are unable to point to any evidence to show that Plaintiffs had ownership rights over the money at the time DiSabatino received the checks. Accordingly, Defendants' motion will be granted with respect to this claim.

### 6. Conspiracy

Plaintiffs have asserted a claim for conspiracy against Defendants Lascelles and DiSabatino. Under Pennsylvania law, "[t]o prove a civil conspiracy, it must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means." Thompson Coal Co. v. Pike Coal Co., 488 Pa. 198, 211 (1979). (citations omitted). "Proof of malice, i. e., an intent to injure, is essential in proof of a conspiracy." Id.

Plaintiffs argue that because there is a triable issue of whether Defendants engaged in unlawful conduct, there is a triable issue of conspiracy. As Defendants point out, Plaintiffs are unable to point to evidence supporting that Defendants acted with the requisite intent. Because Plaintiffs are unable to point to any evidence that Defendants acted with the necessary intent, Plaintiffs' argument fails. See, e.g., Church Mut. Ins. Co. v. Alliance Adjustment Grp., No. 15-461, 2016 WL 3762713, at

*5 (E.D. Pa. July 11, 2016) (applying Pennsylvania law and
granting summary judgment with respect to a claim because the
plaintiff "has failed to produce evidence from which a
reasonable jury could find [the defendants] acted with malice").
Accordingly, Defendants' motion will be granted with respect to
this claim.

### 7. Aiding and Abetting

Plaintiffs claim that DiSabatino aided and abetted
Lascelles in breaching his fiduciary and contractual duties to
Plaintiffs, and that DiSabatino aided and abetted the alleged
unjust enrichment. Because Plaintiffs' claims for breach of
contract and breach of fiduciary duties fail, the only claim
that remains here is Plaintiffs' claim that DiSabatino aided and
abetted Lascelles with respect to unjust enrichment.

Courts have applied the Second Restatement of Torts to
determine whether "a defendant is subject to liability for the
tortious conduct of another" in the context of a claim for
aiding and abetting. The Roskamp Institute, inc. v. Alzheimer's
Institute of America, Inc., No. 15-36411, 2015 WL 6438093, at *9
(E.D. Pa. Oct. 23, 2015) (citing Restatement (Second) of Torts §
876) (emphasis added). Unjust enrichment is premised on a theory
of "quasi-contract or contract implied in law" rather than in
tort. Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 360
(E.D. Pa. 2013) (citing Sevast v. Kakouras, 915 A.2d 1147, 1153

30

n.7 (2007)). Defendants argue that DiSabatino cannot be liable for aiding and abetting a claim for unjust enrichment because unjust enrichment is not considered tortious conduct. Plaintiffs do not contest this.

Because Plaintiffs cannot sustain a claim that DiSabatino aided and abetted Lascelles, Defendants' motion will be granted with respect to this claim.

## V.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for partial summary judgment will be denied. Defendants' motion for summary judgment will be granted with respect to Plaintiffs' claims for breach of contract (Count II), breach of fiduciary duty (Count III), conversion (Count V), conspiracy (Count VI), aiding and abetting (Count VII), money had and received (Count VIII), and preliminary injunction and injunctive relief (Counts XI, XII). Plaintiffs' claim for unjust enrichment (Count IV), however, will survive.