```
           IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ALFRED SALVITTI, et al.         :
                                :       CIVIL ACTION
     Plaintiffs,                :       NO. 19-00696
                                :
          v.                    :
                                :
SCOTT LASCELLES, et al.,        :
                                :
     Defendants.                :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                June 1, 2022

I.   **INTRODUCTION**

Plaintiffs Alfred Salvitti and Nico Salvitti (collectively "the Salvittis") patented and designed a knife and partnered with Plaintiff John-David Potynsky (collectively, "Plaintiffs") to produce the knife under the name "Colonel Blades." At the end of 2013, Plaintiffs reached out to Defendant Scott Lascelles to assist with the marketing and sales of Colonel Blades. In March 2014, Lascelles set up a limited liability company to help manage the production of Colonel Blades. On March 28, 2014, Lascelles registered The Colonel, LLC (the "LLC") with the Pennsylvania Department of State and listed himself as the sole member. Lascelles then managed the day-to-day operations of marketing Colonel Blades, including managing internet sales, working with manufacturers, and distributing the product.

Defendant Lascelles also enlisted his spouse, Defendant Dana DiSabatino (collectively, "Defendants"), to assist with developing a business plan.

Defendants previously sought summary judgment with respect to Plaintiffs' claims for breach of contract (Count II), breach of fiduciary duties (Count III), unjust enrichment (Count IV), conversion (Count V), conspiracy (Count VI), aiding and abetting (Count VII), and money had and received (Count VIII). Defendants also sought summary judgment with respect to Plaintiffs' claims for injunctive relief and preliminary injunction based on Plaintiffs' claims for breach of contract and breach of fiduciary duties (Counts IX, X, XI, XII). On January 6, 2022, the Court granted Defendants' motion for summary judgment with respect to every claim except Plaintiffs' claim for unjust enrichment against Defendants. Thus, Plaintiffs' claim for unjust enrichment remains outstanding.

Defendant Lascelles initially brought counterclaims for (1) breach of contract, (2) unjust enrichment, (3) conversion, and (4) tortious interference with contractual relations. Defendant Lascelles has since indicated that he wishes to withdraw his first three counterclaims and proceed to trial only on his counterclaim of tortious interference.

Presently before the Court is Defendants' motion in limine to exclude the testimony and report of Plaintiffs' expert

Michael Rountree, C.P.A.[1] After holding oral argument, the motion is now ripe before this Court.

## II.   LEGAL STANDARD

Motions in limine "allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." United States v. Tartaglione, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017) (citing Bradley v. Pittsburgh Bd. of Educ., 913 F.2d 1064, 1069 (3d Cir. 1990)). "The trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds." Id. (citing Leonard v. Stemtech Health Sciences, Inc., 981 F. Supp. 2d 273, 276 (D. Del. 2013)). The party seeking to exclude evidence "bears the burden of demonstrating that the challenged evidence is inadmissible 'on any relevant ground.'" Apotex, Inc. v. Cephalon, Inc., No. 2:06-CV-2768, 2017 WL 2362400, at *2 (E.D. Pa. May 31, 2017) (quoting Leonard, 981 F. Supp. 2d at 276).

---

[1] Defendants have also filed motions in limine (1) to preclude evidence of Plaintiffs' unjust enrichment claim based on the statute of limitations, (2) to preclude evidence of Plaintiffs' dismissed patent claims, (3) to "follow the law of the case," and (4) to preclude post-complaint evidence. Plaintiffs have filed a motion to compel additional discovery. These motions will be addressed in a separate order.

3

### III. DISCUSSION

#### A.   The Expert Report of Michael Rountree

Defendants move to exclude the report and testimony of Plaintiffs' expert, Michael Rountree, C.P.A. Rountree offers a forensic analysis of Defendants' financial activities with respect to the sale and management of Colonel Blades. Plaintiffs offer Rountree's report and testimony to support their claim for unjust enrichment.[2]

Plaintiffs specifically offer Rountree's report for support that Lascelles deviated from acceptable accounting principles and, as a result, Lascelles was unjustly benefitting from the sale of Colonel Blades. According to Plaintiffs, Rountree reviewed "the various book accounts through which the company business ran," e-commerce provider data, invoices, payments, and "all of the things that underlie a product-based business." Arg. Tr. 3:21-25, ECF No. 122. Plaintiffs explain that after reviewing the aforementioned documents, Rountree discovered "a delta between what is reflected in the declared revenue of the company . . . and the amount of product ordered at the price purportedly offered on [t]hird [p]arty websites." Arg. Tr. 4:1-5. Plaintiffs aver that this is evidence that money went

---

[2]   Rountree prepared his report before the Court dismissed Plaintiffs' claims for breach of contract and breach of fiduciary duties. Plaintiffs initially sought to use Rountree's report to support those claims as well.

4

missing, which supports their claim that Lascelles was unjustly enriched.

Rountree provides three opinions in his report: the "inventory analysis," the "accounting opinion," and the "personal account opinion." In Rountree's inventory analysis, he estimates the retail value of the products sold by the LLC and compares the amount to the total revenue Lascelles reported on the LLC's tax return. Rountree concludes that there are unaccounted for sales amounting to approximately $736,181.

Rountree's accounting opinion provides that Lascelles managed the LLC in an improper manner. He specifically opines that Lascelles "did not maintain accounting records for [the LLC's] underlying financial activities, e.g., no bank registers, no general ledgers, no tracking of inventory costs or sales," that Lascelles improperly used his personal bank account to manage the LLC's activities, and that Lascelles should not have reported the LLC's alleged profits and losses on his personal income tax returns. Rountree Rep. at 2-3, ECF No. 105-3. Rountree's accounting opinion provides that, overall, Lascelles did not observe the LLC's formalities when managing the LLC and so Lascelles deviated from sound and standard accounting practices.

Rountree's personal account opinion provides that issues with Lascelles' accounting practices created a need for Rountree

5

to examine the transactions in Lascelles' personal bank account. Rountree claims that the timing of several deposits between 2015 and 2019 "coincide with the production of inventory by The Colonel, LLC and correspond with a pattern of missing inventory units, which makes all deposits subject to scrutiny, especially with the admitted commingling of LLC and personal funds." Id. at 7. Rountree also opines that on at least seventeen occasions, Lascelles deposited proceeds from Colonel Blades into his personal account totaling $36,598.

### B. The Report is Neither Reliable Nor a Proper Fit

When considering whether an expert may testify, the trial judge must:

> (1) confirm the witness is a qualified expert; (2) check the proposed testimony is reliable and relates to matters requiring scientific, technical, or specialized knowledge; and (3) ensure the expert's testimony is "sufficiently tied to the facts of the case," so that it "fits" the dispute and will assist the trier of fact.

UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres, 949 F.3d 825, 832 (3d Cir. 2020) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 591 (1993)). Defendants' overarching argument is that Rountree's report fails both the requisite "reliability" and "fit" prongs.

The reliability requirement of Rule 702 provides that "the expert must testify to 'scientific, technical or other specialized knowledge [that] will assist the trier of fact.'" In

6

re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994) (quoting Fed. R. Evid. 702). This means that "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." Id.[3] The expert's opinion must be based on appropriate methods and procedures, rather than on "subjective belief or unsupported speculation." Id. (quoting Daubert, 509 U.S. at 590).

Additionally, the underlying data must be reliable. "There will be times when an expert's methodology is generally reliable but some of the underlying data is not of a type reasonably relied on by experts." Id. at 749 n.19. "In those cases, the expert can testify so long as he or she does not significantly rely on the unreliable data, and so long as his or her testimony

---

[3] To assess an expert's methodology under Rule 702, a district court should consider, where appropriate, the following factors:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based upon the methodology; and (8) the non-judicial uses to which the method has been put.

Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000) (quoting Paoli, 35 F.3d at 742 n.8).

survives Rule 702 without any reliance on the excluded data." Id. "When a trial judge analyzes whether an expert's data is of a type reasonably relied on by experts in the field, he or she should assess whether there are good grounds to rely on this data to draw the conclusion reached by the expert." Id. at 749.

Moreover, "[t]o determine whether an expert's testimony 'fits' the proceedings, this Court asks whether it 'will help the trier of fact to understand the evidence or to determine a fact in issue.'" UGI Sunbury LLC, 949 F.3d at 835 (first citing Fed. R. Evid. 702(a), then citing Karlo v. Pittsburgh Glass Works, LLC, 894 F.3d 61, 81 (3d Cir. 2017)). "'Fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." Id. (quoting Daubert, 509 U.S. at 591). "Thus, even if an expert's proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is not scientific knowledge for purposes of the case." Id. (quoting Paoli, 35 F.3d at 743) (emphasis in original).

Defendants primarily argue that Rountree's accounting opinion, personal account opinion, and inventory report are not reliable or a proper "fit" because they fail to consider pertinent evidence. Defendants contend that Rountree failed to review and consider Lascelles' declaration and the deposition testimony of Lascelles, Potynsky, Salvitti, and the LLC's

accountant, Joseph Tighe, C.P.A. Defendants maintain that as a result, Rountree is unable to understand how the business actually operated.

With respect to Rountree's "inventory opinion," in which Rountree estimated the retail value of the products sold and compared that amount to the total sales revenue Lascelles reported on the LLC's tax returns, Defendants contend that Rountree incorrectly assumed that every sale was made at the full retail price when, in reality, some inventory was sold at a discounted rate and some inventory was given away for free. Defendants point to Lascelles' declaration for support. In his declaration, Lascelles testified that at least one wholesale customer purchased 1,750 units of inventory for $40 each, while Rountree's analysis assumes that the inventory was purchased for the full retail price of $79.99. Lascelles Decl. ¶ 184, ECF No. 105-9. Defendants argue that as a result, Rountree's report overestimates the LLC's sales by at least $69,982.50.

Further, Lascelles testified that some merchandise was given away for free as part of a Black Friday promotion. See Lascelles Dep. 239:18-24, ECF No. 105-7. Lascelles also testified that four to five percent of the metal knives were given away for free as part of marketing promotions, see Lascelles Dep. 446:19-24; 447:15, and other products were sold in bundles at discounted prices or sold at a "friends/family"

9

discount. Defendants maintain that by failing to consider this, Rountree overstated the "unaccounted" inventory valuation by approximately $222,810.90.

Defendants further argue that there are issues with Rountree's accounting opinion and personal account opinion. As previously noted, these opinions involve the assessment of Lascelles' management of the LLC, the accounting practices that Lascelles used, and whether Lascelles deposited checks for the LLC's inventory into his personal bank account. Defendants explain that though Rountree opines there is "no reason" for Lascelles to have deposited LLC-related funds into his personal account, Lascelles explained in his deposition that at one point, Potynsky wrote a check out to Lascelles rather than to the LLC, which forced Lascelles to deposit the check into his personal account. See Lascelles Dep. 164:7-15. Lascelles' declaration also provides that Lascelles paid suppliers from funds in his personal bank account when the LLC's account did not have sufficient funds available. Lascelles explained that Plaintiffs did not provide any monetary support to fund the operation so, at times, Lascelles was required to pay suppliers from his personal account. Lascelles Decl. ¶ 8, ECF No. 105-9. According to Lascelles, he then tracked these transactions on a "dry eraser board" and credited the amounts he paid against sums he was owed by the LLC. Lascelles Dep. 417:3-11. Defendants

argue that Rountree's analysis is unreliable because Rountree failed to consider this pertinent information.

Finally, Defendants contend that Rountree failed to consider the deposition testimony of the LLC's accountant, Joseph Tighe, C.P.A. Tighe testified that Lascelles kept "very detailed schedules of how much each knife cost and how many he had left at the end of the year," that he was able to "verify the costs of the knives that were purchased as we had all he invoices from the different purchases of the knives." Tighe Dep. 43:20-23; 47:16-19, ECF No. 105-13.[4]

---

[4]     Defendants also produced a rebuttal report from Tighe. With respect to Rountree's opinion that Lascelles failed to use best practices when managing the LLC, Tighe concludes that:

> Mr. Rountree [states] that the accounting practices we employed deviate from acceptable accounting standards. I disagree. Mr. Lascelles's company, Colonel, is a single member LLC filing as a sole proprietor using the tax basis of accounting. That accounting basis is an acceptable method of accounting for a business like Colonel. Mr. Lascelles maintained accounting records for Colonel that were supplied to my firm annually, accounted for inventory, and provided us with the information that we needed to file his Schedule Cs and to create reliable financial statements after they were requested by Plaintiffs during this litigation.

Tighe Rep. at 3 ¶ 9, ECF No. 105-5. Tighe's report also provides that:

> Mr. Rountree claims that it was 'grossly negligent' for Mr. Lascelles to 'commingle' company and personal financial accounts. In my experience, it is customary for a small business owner, whether it be a single member LLC or a small partnership, to occasionally use a personal credit card to pay for business expenses and

11

Overall, Defendants maintain that Rountree's failure to review these documents is fatal to his analysis and, as a result, his methodology is neither reliable nor a proper "fit."

For support, Defendants point to Baker v. United States, a case where the Third Circuit affirmed the lower court's decision to exclude proffered expert testimony. 642 F. App'x 147, 149 (3d Cir. 2016). In Baker, the plaintiffs brought a Monell claim against the City of Camden arguing that the City's failure to properly train their SWAT Team resulted in City officers using excessive force. Id. at 151. The plaintiffs offered an expert to opine on the City's failure to train the SWAT Team, and the expert concluded that "lack of resource[s] led to poor training by the SWAT Team at the time and caused them not to establish or properly follow protocols dealing with certain operations such as entry and searches of residential properties while occupied."

---

then seek reimbursement from the company, or to deposit checks written out personally to the member into a personal account (because they often cannot be deposited into the business account) and then issue personal checks back to the company or otherwise track those personal transactions against monies owed to the individual by the company. Contrary to Mr. Rountree's opinion, there is nothing per se improper about these practices, and they do not constitute improper 'commingling' as Mr. Rountree suggests by his pejorative use of that term. Mr. Lascelles has accounted for and documented each of these instances, many of which appear to be unavoidable.

Id. at 3 ¶ 8. Plaintiffs do not contest the reliability of Tighe's report in their opposition to Defendants' motion.

12

Id. The district court ultimately found the expert's report to be unreliable because the expert "could provide no basis for his opinion regarding a lack of training beyond the conduct of the officers giving rise to this litigation" and because the expert "admitted that he did not review any materials regarding the training of the Camden SWAT Team and conceded that, in fact, he did not know what training the Camden SWAT Team received in the years preceding the incident at issue." Id. Given this, the Third Circuit affirmed the district court's rejection of the expert's testimony. Id.

Defendants similarly point to CareDx, Inc. v. Natera, Inc., a case involving allegations that the defendant falsely advertised their kidney transplant test as superior to the plaintiff's kidney transplant test. No. 19-662, 2021 WL 1840646, at *3 (D. Del. May 7, 2021). The plaintiff sought to introduce an expert to establish the cost of corrective advertising efforts. Id. at *2. The expert relied solely on the deposition testimony of plaintiff's CEO to calculate the costs of corrective advertising. Id. at *2-*3. During the CEO's deposition, the CEO explained that it spent approximately $30 million on marketing, sales, and investor relations, and approximately 60-70% of that $30 million was directed towards defending against the defendant's advertising claims. Id. at *3. The plaintiff's expert then reported that the plaintiff incurred

13

$18-$21 million in corrective advertising costs, because "$30m * 0.6 = $18m. $30m * 0.7 = $21m." Id. The CareDx court excluded the calculations finding that they were not specialized findings and they would not help the trier of fact. Id. The court found that the opinions were not reliable because "[t]hey were not reached by application of a scientific method or procedure and the underlying rough data supplied by [the CEO's] testimony does not provide a reliable basis on which to make a scientific opinion." Id.

Defendants further rely on Jacoby Donner, P.C. v. Aristone Realty Capital LLC, a case where the court excluded an expert's calculation of damages of a related settlement agreement because the expert "fail[ed] to ascertain basic facts about the two settlement agreements at issue—whether [defendant] paid, or was obligated to pay, any part of the settlements." No. 17-2206, 2020 WL 5095499, at *20 (E.D. Pa. Aug. 28, 2020).

In their response, Plaintiffs do not corroborate the methodology Rountree used and do not distinguish the cases Defendants rely upon. Instead, Plaintiffs merely argue that Lascelles is not an accounting expert, that Rountree's report should go towards the weight rather than the admissibility of the evidence, and that because Rountree relies on Defendants' own records, Defendants cannot "keep admittedly incomplete

14

records and then complain that Rountree's analysis suffers because of it." Resp. at 10, ECF No. 115.

At oral argument, Plaintiffs repeatedly argued that Rountree is the only "[a]ccountant among us in [the] room" and that "he had what he needed to review." Arg. Tr. 8:6-7; 10:6-7. However, Rountree's academic pedigree does not excuse him from reviewing all relevant materials. Though Rountree did review Defendants' own records, the Court still finds that Rountree's failure to take into account pertinent testimony is a significant error that impugns the reliability of his report.

In rendering his opinion, Rountree should have either relied upon or distinguished the relevant deposition testimony and Lascelles' declaration. If Rountree had done so, his report would have provided a more complete picture of the LLC's accounting practices.[5] Thus, there are several issues with respect to the reliability of Rountree's report. Like in <u>Baker</u>, <u>CareDx</u>, and <u>Jacoby Donner</u>, the report has failed to consider pertinent information. The report will also not aid in assisting the "trier of fact to understand the evidence" and issues in the

---

[5] Defendants also contend that Rountree's opinions about whether Lascelles deviated from best accounting practices are no longer a proper "fit," because the Court has dismissed Plaintiffs' claims for breach of fiduciary duties and breach of contracts claims. Because the Court has already determined that Rountree's opinion should be dismissed, the Court need not reach this argument.

case. UGI Sunbury LLC, 949 F.3d at 835. Accordingly, Rountree's opinion and testimony will be excluded.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion in limine to exclude the testimony and expert report of Michael Rountree, C.P.A. will be granted. An appropriate order follows.